A. H. BULL S. S. CO., Inc.

v.

UNITED STATES.

THE MARY.

No. 20, Docket 22733.

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1953.

Decided Dec. 14, 1953.

Kirlin Campbell & Keating, Washington, D. C., for appellant, Clement C. Rinehart and Harold B. Finn, New York City, Louis J. Gusmano, Woodhaven, N. Y., of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for appellee, Benjamin H. Berman, Atty., Dept. of Justice, Washington, D. C., of counsel.

Before CHASE, Chief Judge, CLARK, Circuit Judge and BRENNAN, District Judge.

CHASE, Chief Judge.

This appeal presents questions as to the proper construction of the provisions of a charter party on which the appellant sued the United States to recover additional charter hire and additional insurance on its S.S. Mary which had been delivered to the government for war use. The libel was dismissed after hearing on the merits.

The appellant is a New Jersey corporation which on January 23, 1942, owned and operated vessels under the American flag which were suitable for use by the government in its defense effort and one of them was the S.S. Mary, a dry cargo vessel. On that day the Maritime Commission telegraphed the appellant that the Mary was required for such purposes and that it would charter her "Upon Readiness Load on Uniform Charter Conditions Rates as Per General Order No. 49. Please Advice Readiness Date and Port. * * *" General Order No. 49, which went into effect on January 20, 1942, established a new schedule of charter hire rates and provided that war risk insurance on vessels would be for the account of the charterer with the valuation for that "subject to formulae to be approved by the Commission from time to time and incorporated in general orders." Such a schedule of war risk insurance valuations was set forth in General Order No. 53 which became effective on January 22, 1942.

The appellant complied with the Commission's telegram by delivering the S.S. Mary to it on January 26, 1942, at Baltimore, Md., "under terms and conditions of time charter to be executed." Before such charter was executed, however, the vessel was, on March 3, 1942, sunk by the enemy. The day before the vessel was lost the Commission sent to the appellant a charter for the Mary based on the maximum charter hire rates of General Order No. 49 and the maximum war risk insurance valuations of General Order No. 53, of which Part I was on Form 9018–A and Part II on Form 9018. Immediately following the caption was the following "(Made by the Charter pursuant to the provisions of Public Law No. 101—77th Congress, approved June 6, 1941, and the Charterer has made all determinations with respect thereto)." The appellant returned it with some proposed corrections which were made by the Commission and, by March 26, 1942, the corrected charter had been executed by both parties.

The charter hire rates of General Order No. 49 and the war risk insurance valuations of General Order No. 53 were less than those which had previously been adopted and made effective by the Commission on July 30, 1941. Such reductions had been protested by ship owners generally and that had induced the Commission to undertake to reconsider them. On March 27, 1942, the day after the Commission had executed the corrected charter for the Mary which the appellant had previously signed, the Commission sent the appellant an addendum which became a part of the charter and which in so far as presently pertinent provided that: "If the rate of hire provided for in this Charter on and after January 20, 1942 is in accordance with the appropriate maximum rate provided for in United States Maritime Commission Order No. 49, or if the insurance value of the vessel provided for in this Charter is in accordance with the applicable value under United States Maritime Commission General Order No. 53 then in the event the Administrator, War Shipping Administration, at any time prior to May 15, 1942, modifies the schedule of rates provided for in United States Maritime Commission General Order No. 49, or the schedule of insurance values prescribed by United States Maritime Commission General Order No. 53, the Owner shall have the option of receiving the benefits of such modifications to the extent that they may be applicable to the vessel chartered thereunder, but in the case of rates not earlier than January 20, 1942. Such adjustment of values will be made by appropriate assumption of risk, absorption of premiums on existing insurance, increase of existing insurance, or otherwise as the Administrator may determine."

In the meantime, on February 8, 1942, the President had issued Executive Order No. 9054, 50 U.S.C.A.Appendix, § 1295 note, establishing the War Shipping Administration to take over the functions and powers of the Maritime Commission with respect to the operation, purchase, charter and requisition of vessels under the Merchant Marine Act, 1936, as amended, Public Law 101, and Public Law 173. (Title 3, CFR, Cum. Supp. 1086.)

On May 14, 1942, the War Shipping Administrator issued General Orders 8 and 9. General Order No. 8 modified General Order No. 49 and prescribed a schedule of charter rates effective as of January 20, 1942, applicable to vessels which had been "chartered under terms and conditions of charter parties tendered by the War Shipping Administration to owners of such vessels, pursuant to the provisions of Section 902 of the Merchant Marine Act, 1936, as amended, * * *" General Order No. 9 modified Commission General Order No. 53 and provided for insurance valuations which were similarly restricted in their application. General Order No. 11, also issued on May 14, 1942 prescribed the form of requisition time charter adopted by the War Shipping Administration for dry cargo vessels and was designated Warshiptime Form 101.

Charter hire and war risk insurance was paid to the appellant computed upon the basis of the rates and an insurance valuation determined with reference to Commission General Orders Nos. 49 and 53. The appellant claimed that the computation should have been made on the basis of such rates and insurance valuation modified as prescribed in General Orders 8 and 9 which would have increased the amount due it by $55,779.57. The government refused to pay the additional amount, contending that the addendum to the Mary's charter, above quoted in part to show its provisions in respect to modified charter hire rates and insurance valuations, did not make such modifications applicable to her because she was not chartered under the terms and conditions of a charter party tendered to her owner pursuant to the provisions of Section 902 of the Merchant Marine Act, 1936, as amended, 46 U.S.C.A. § 1242, but instead was chartered under a charter party tendered under the provisions of Public Law 101. The district judge took this view, being of the opinion not only that the Mary's charter expressly showed that it was made pursuant to Public Law 101 but that it could not have been made under Section 902 of the Merchant Marine Act of 1936, as amended, because, as he construed that statute it authorized the Commission to charter only vessels which it had first requisitioned.

It is true, as was pointed out in the opinion below, D.C., 105 F.Supp. 474, that from the time of the President's proclamation of an unlimited national emergency on May 27, 1941, the provisions of Section 902 of the Merchant Marine Act of 1936, as amended 46 U.S.C.A. § 1242, enabled the Maritime Commission to acquire vessels, or their use, pursuant thereto and that this was so when Public Law No. 101, 50 U.S.C.A. Appendix, § 1273, went into effect on June 6, 1941. That law, in Section 3, provided that: "During the national emergency declared by the President on September 8, 1939, to exist, but not after June 30, 1942, the United States Maritime Commission, whenever it finds that vessels in addition to those otherwise available are necessary for transportation of foreign commerce of the United States or of commodities essential to the national defense, is authorized, notwithstanding any other provisions of law, (1) to charter any vessel, whether undocumented or documented under the laws of the United States or of a foreign country, * * *." 55 Stat. 243. Thus it is apparent that under this statute vessels could be chartered without any previous requisition of them and to the extent that such vessels might be owned by citizens or under construction in the United States this statute did, indeed, overlap the Merchant Marine Act of 1936 as it was amended on August 7, 1939. As it was originally enacted the latter statute empowered the Commission to "requisition any vessel documented under the laws of the United States, during any national emergency declared by proclamation of the President, * * *." 49 Stat. 2015. But as amended in 1939, at all times here pertinent, the now material part of the section read:

"Whenever the President shall proclaim that the security of the national defense makes it advisable or during any national emergency declared by proclamation by the President, it shall be lawful for the Commission to requisition or purchase any vessel or other watercraft owned by citizens of the United States, or under construction within the United States, or for any period during such emergency, to requisition or charter the use of any such property." 53 Stat. 1255. That this amendment was intended to give the Commission authority to requisition or purchase the vessels themselves or to requisition or charter their use during such emergency seems clear enough from its language as well as that authorization was limited to vessels or watercraft which were owned by citizens of the United States or under construction within the United States. We think that in the phrase "to requisition or charter the use of any such property" the words "any such property" referred

892

to vessels so owned or under construction and not to vessels or watercraft previously requisitioned as the judge supposed. Any possible doubt in this respect seems to be dispelled by the Report of the House Committee on this amendment, H. R. 4983 (House Committee Report No. 660, May 18, 1939), and of the report of the Senate Committee on Commerce. (Report No. 678 on H. R. 4983, 76th Congress, 1st Session.)

■ However, even though such overlapping makes the two statutes partially redundant, such redundancy is but a circumstance to be noted as one which does not restrict the scope of either statute but merely gave the Commission, to the extent of such overlapping, an election to tender charters under the provisions of either, for a vessel of the kind and ownership of the Mary. Nor would a charter tendered under the provisions of one statute necessarily have been different in terms from one tendered under the other. And where, as here, the Commission did have an election it was enough to show that it had made one and to give the owner notice of that to state, as it did under the caption as above noted, that it was acting pursuant to a named statute. We agree with the trial judge that the Mary's charter was tendered to the appellant pursuant to the provisions of Public Law No. 101 and not pursuant to those of Section 902 of the Merchant Marine Act of 1936, as amended.

The appellant contends that although both General Orders 8 and 9 expressly state that they are "applicable to all American-flag self-propelled ocean-going iron and steel dry cargo vessels chartered under terms and conditions of charter parties tendered by the War Shipping Administration to owners of such vessels pursuant to the provisions of Sec. 902 of the Merchant Marine Act, 1936, as amended," with certain stated exceptions not now pertinent, such language, even if the Mary's charter was tendered under Public Law No. 101, neither expressly includes nor excludes her from coverage. And it insists that because of what it

calls the internal evidence supplied by those orders and another, No. 11, which became effective at the same time they did, it should be held that they are applicable to vessels whose charters were tendered pursuant to Public Law No. 101.

This argument in respect to General Order No. 8 is that its second paragraph made the rates therein stated "effective January 20, 1942" which was the effective date of the charter hire rates of Commission General Order No. 49 and also was as of the date when the Commission's "uniform charter conditions" were embodied in "Form 9018" that was used in chartering the Mary. Furthermore, paragraph 5 of Order No. 8 reads: "The charter rates and adjustments herein prescribed are based upon standard form of time charter agreement approved by the War Shipping Administrator and designated Warshiptime Form 101 in General Order No. 11." Since General Order No. 11 contains a recital which shows that it had been found that "vessels in addition to those otherwise available are and will be necessary for transportation of foreign commerce of the United States or of commodities essential to the national defense and to the prosecution of the war; * * *" and such a finding was necessary to give the Commission authority to charter vessels under Public Law No. 101, though not to charter under Section 902, the intent to make General Order No. 8 applicable to vessels chartered pursuant to the provisions of Public Law No. 101 is shown at least in respect to future charters of vessels. And the same argument, except the basing of rates upon Warshiptime Form 101, is made as to General Order No. 9. But the language of the orders so plainly limits their applicability to vessels chartered pursuant to the provisions of the Merchant Marine Act that it must be given controlling effect.

The appellant also points out that the record shows that on March 27, 1942, the War Shipping Administration advised the appellant by telegram that it would charter nineteen more of its vessels under Order 49 rates and Order 53 valuations.

It included in the telegram a statement that the rates and valuations were being reviewed and if they were modified within the prescribed time the owner might elect to receive the benefit of such modifications. Thirteen of such vessels were delivered and charters, whose provisions in so far as they are now material were like the Mary's, were tendered for them and executed by the parties. On May 19, 1942, after the modifications of Orders Nos. 8 and 9 had been made, the Administrator telegraphed the appellant that all of these vessels were requisitioned for use under time charters at the termination of their present voyages and subsequently the Administrator tendered the appellant charters for all of these vessels, but one, on Form 101 as prescribed in General Order No. 11 which superseded the original Form 9018 charters and became effective as of the date each vessel had been originally chartered to give the owner the benefit of the rates and valuations as modified in General Orders Nos. 8 and 9. · So it is urged that all that was needed, if anything was needed, to make the modified rates and valuations applicable to the Mary was the purely ministerial act of substitution of charters as in the case of the vessels above mentioned. That being so, we are asked to apply equitable principles and to treat the substitution as having been made when it ought to have been made.

Of course, within the limits of their jurisdiction as courts of admiralty such courts do apply equitable principles when they are appropriate. Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989; United Fruit Company v. United States, 1 Cir., 186 F.2d 890. But, regardless of the similarity of the terms of the original charters of these twelve vessels for which substituted charters were tendered by the Administrator or whether such differences as there were were more favorable to the owner or to the government, there was a distinct difference between the circumstances in respect to such charters and that of the Mary. In the case of the Mary the addendum gave the owner an election to benefit by such modifications, if made, which were applicable to the Mary, but the telegram the Administrator sent to the appellant on March 27, 1942, which initiated the chartering of the other vessels expressly gave the owner an election to receive the benefit of such modifications conditioned only upon the making of them before a fixed date. Consequently, we can discover no sufficient basis for the application of equitable principles urged by the appellant to justify a construction of the Mary's charter, as amplified by the addendum, so as to substitute the charter hire rates and insurance valuation of General Orders 8 and 9 for the rates and valuation originally fixed by the charter's terms.

Decree affirmed.