**Gumersindo PADRO, Plaintiff,**

v.

**VESSEL CHARTERS, INC., Defendant.**

**No. 89 Civ. 1843 (PKL).**

United States District Court,
S.D. New York.

Feb. 28, 1990.

Alan H. Bushbaum, New York City, for plaintiff.

Radu Herescu, New York City, for defendant.

## ORDER & OPINION

LEISURE, District Judge:

Defendant Vessel Charters, Inc. ("VCI"), owner of the SS SANTA ADELA, claims that it is not a proper party to this lawsuit brought by its employee, seaman Gumersindo Padro. VCI supports its claim by citing the Suits in Admiralty Act ("SIAA" or the "Act") [1] which, under certain circumstances, holds the United States exclusively liable for admiralty claims arising under the SIAA. 46 U.S.C.App. § 745. VCI time-chartered the vessel SS SANTA ADELA to the United States, through the Military Sealift Command, an agency of the Department of the Navy. Because VCI believes the SIAA applies here, it seeks dismissal of the lawsuit for lack of subject matter jurisdiction. Alternatively, VCI requests that summary judgment be granted. After careful review of the SIAA and case law interpreting it, the Court denies VCI's motion for dismissal for lack of subject matter jurisdiction. As a number of factual issues remain to be resolved, VCI's motion for summary judgment is also denied.

## BACKGROUND

The facts not in dispute will be briefly summarized. In 1984, VCI entered into a time-charter agreement with the Department of the Navy. Pursuant to the agreement, VCI was to provide the vessel SS SANTA ADELA for the Navy's use, with VCI retaining responsibility for manning the ship with officers and crew, as well as navigation, care and custody of the ship.

1. The SIAA is set forth in 46 U.S.C.App.

*See* Defendant's Exhibit 1, Article 22(a) (the "time-charter agreement"). The resulting relationship provided that the Navy designate the cargo to be carried and the ports to be visited, while VCI had day-to-day operational control of the SS SANTA ADELA.

On April 3, 1988, with the time-charter agreement operative, plaintiff sustained a severely broken left leg while assisting at docking the ship in Yakohoma, Japan. His injury allegedly resulted when one of the mooring lines snapped and wrapped around his leg. As a result of the injury, plaintiff has been unable to return to work as a merchant seaman.

On March 17, 1989, plaintiff brought this lawsuit alleging that his injury was caused by VCI's negligence in maintaining its mooring lines, or, alternatively, by the unseaworthiness of the SS SANTA ADELA. In its answer, VCI alleged, as its first affirmative defense, that plaintiff's exclusive remedy lies against the United States pursuant to the SIAA. This motion is grounded on that defense and requests that VCI be dismissed as defendant because the Court lacks jurisdiction over it.

## DISCUSSION

The Court will first consider the SIAA and case law interpreting it before discussing its application here.

### A. Suits In Admiralty Act

VCI claims that the United States is the exclusive defendant in this lawsuit, pursuant to the SIAA. Sections 741 through 745 of the Act provide the statutory frame for VCI's claim, and the sections must be read together to understand their use.

Section 741 provides in relevant part:
No Vessel owned by the United States ... or in the possession of the United States ... or operated by or for the United States ... shall hereafter, in view of the provision herein made for a libel in personam [Section 742], be subject to arrest or seizure by judicial process in the United States or its possessions....

§§ 741–745.

The important passage for this lawsuit is "Vessel[s] ... operated by or for the United States," which the Court finds includes a vessel such as the SS SANTA ADELA. A reasonable interpretation of the plain language of the statute requires its application to a privately owned ship operated for the benefit of the United States. *See J. W. Petersen Coal & Oil Co. v. United States*, 323 F.Supp. 1198, 1205–06 (N.D.Ill.1970) (articulates the meaning of "operated by or for the United States," and concludes that a time-charter is encompassed by the "operated for" language); *see also A.H. Bull S.S. Co. v. United States*, 105 F.Supp. 474, 479 (S.D.N.Y.1952), *aff'd*, 208 F.2d 888 (2d Cir.1953).

The Court must also consider section 742 to determine whether the SS SANTA ADELA is within the jurisdiction of the SIAA. Section 742 provides that, "[i]n cases where ... if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States." Certainly, absent the time-charter agreement, plaintiff could have maintained an admiralty proceeding against VCI, as the owner of the SS SANTA ADELA, to recover damages for his injury. *See Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 791, 69 S.Ct. 1317, 1321–22, 93 L.Ed. 1692 (1949). Thus, at this stage of the analysis, plaintiff's claim appears to be within the jurisdiction of the SIAA because the SS SANTA ADELA was being operated for the United States and plaintiff's claim is one to be heard in an admiralty proceeding.

Finally, section 745, providing the remaining element in the SIAA framework, states that, "where a remedy is provided by this Act, it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose acts

or omission gave rise to the claim." VCI claims that this exclusivity provision precludes plaintiff from maintaining this action against it, as the United States is the proper, and exclusive, party to the action. Plaintiff argues, on the other hand, that exclusivity only attaches when the remedy sought is provided by the SIAA, but not when the United States is merely a time-charterer without operational control of the vessel.

In sum, VCI argues that it was operating the SS SANTA ADELA for the United States pursuant to the time-charter within the purview of section 741. Further, the United States was amenable to an admiralty claim by section 742. Finally, VCI is absolved of direct liability by the exclusivity provision of section 745. Although VCI's position may be supported by a plain reading of the SIAA, the case law interpreting the SIAA prevents the Court from adopting VCI's interpretation of the statute.[2] Further, the Court believes such a restrictive reading of the SIAA is inappropriate under these circumstances.

### B. Case Law Applying the SIAA

In *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990), the Fifth Circuit, interpreting the SIAA on facts similar to those here, ruled that the Act itself provides no actual remedy against the United States, but only serves to waive sovereign immunity for the United States in admiralty actions. *Id.* at 1059 (*citing Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir.1982)). The court proposed a two-part test which must be met to absolve a private ship owner, time-chartering its ship to the United States, from maritime liability because of the SIAA's exclusivity provision. First, the United States must have consented to the lawsuit, providing a "jurisdictional hook"

**2.** VCI supports its case by citing *Stubblefield v. Vickers Towing Co.*, 674 F.Supp. 566 (N.D.Miss. 1987), which, on similar facts, accepted the defendant's argument and found the United States to be the exclusive defendant under section 745 of the SIAA. However, after the Fifth Circuit's decision in *Williams v. Central Gulf Lines*, 874

F.2d 1058 (5th Cir.1989) (discussed *infra*), the Mississippi District Court withdrew its decision. *Stubblefield v. Vickers Towing Co.*, 719 F.Supp. 1337 (N.D.Miss.1989). Thus, VCI's arguments based on *Stubblefield*, and its progeny, *Nakano v. United States*, 1988 A.M.C. 2220 (S.D.Cal. 1988), are not persuasive.

to include the United States as a defendant. Second, the defendant asserting the exclusivity defense must show that the United States is susceptible to a "traditional admiralty claim" under the particular circumstances present in the case. *Williams, supra,* 874 F.2d at 1061. Unless both parts of the test are satisfied, the private ship owner may not use the SIAA's exclusivity provision to avoid being a party to the lawsuit. *Id.* The Court will adopt the analysis of the Fifth Circuit in *Williams.*

Sections 741 and 742 of the SIAA establish the first part of the test—the United States's consent to the lawsuit under the present facts. *Williams, supra,* 874 F.2d at 1062. The legislative intent of the SIAA discloses Congress's desire to free United States merchant vessels from the possibility of arrest or seizure. To do this, Congress waived sovereign immunity for admiralty claims arising from the operation of such vessels. *Schnell v. United States,* 166 F.2d 479, 481 (2d Cir.), *cert. denied,* 334 U.S. 833, 68 S.Ct. 1346, 92 L.Ed. 1760 (1948). VCI satisfies this prong of the test by showing that the United States consented to the present lawsuit by time-chartering the SS SANTA ADELA for operation as a United States merchant vessel.

However, the second part of the test, whether a traditional admiralty claim may be asserted against the United States, is not as readily satisfied. The Second Circuit's general rule on a time-charterer's liability, clearly in accord with the Fifth Circuit's rule, is that, " '[a] time charterer assumes no liability flowing from the unseaworthiness of the vessel or the negligence of the crew unless it is shown that the parties to the charter intended otherwise.' " *Atlantic Richfield Co. v. Interstate Oil Transport Co.,* 784 F.2d 106, 113–114 (2d Cir.), *cert. denied,* 479 U.S.

817, 107 S.Ct. 75, 93 L.Ed.2d 31 (1986) (*quoting Klishewich v. Mediterranean Agencies, Inc.,* 302 F.Supp. 712, 713 (E.D. N.Y.1969)); *see P & E Boat Rentals, Inc. v. Ennia General Ins. Co.,* 872 F.2d 642, 647 (5th Cir.1989). Therefore, to succeed, VCI must show that the intent of its time-charter agreement with the United States was that the United States would be liable for injuries such as the one incurred by seaman Padro here.[3]

### C. The Time–Charter Agreement

The time-charter agreement between VCI and the United States contains two provisions deemed dispositive by the *Williams* court in finding jurisdiction over the private ship owner for the seaman's injuries. The persuasive provisions, articles numbered 22(a) and 31, are numbered identically to the time-charter agreement involved here. The articles indicate to the Court that VCI retained liability for the negligence of its crew and the unseaworthiness of the SS SANTA ADELA, and thus cannot avail itself of the exclusivity provision in the SIAA.

Article 31, titled "CHARTER NOT A DEMISE," leaves no doubt that a time-charter, as opposed to a demise or a bareboat charter, is intended. Article 22(a), titled "THE MASTERS, OFFICERS AND CREW," sets forth the parties' responsibilities for the seamen aboard the SS SANTA ADELA. It states in relevant part:

> The Master, Officers and crew of this Vessel shall be appointed or hired by the Owner and shall be deemed to be the servants and agents of the Owner at all times except as otherwise specified in this Charter. The Master of the Vessel shall be under the direction of the Charterer as regards the employment of the

---

**3.** To decide this issue, courts look, first, to the ownership of the ship, and, second, at the relationship between the United States and the private party. Generally, if the United States is the owner of the ship and the private party is operating the ship as its agent, the United States retains exclusive liability for injuries to the ship's seamen pursuant to the SIAA. *See Carter v. American Export Isbrandtsen Lines, Inc.,* 411 F.2d 1185, 1186 (2d Cir.1969); *Petition of the*

*United States,* 367 F.2d 505, 511 (3d Cir.1966), *cert. denied,* 386 U.S. 932, 87 S.Ct. 953 & 957, 17 L.Ed.2d 805 (1967). However, there are few cases, involving personal injuries to a seaman, where the private party is the owner of the ship while the United States time-charters the ship. *Williams* and the cases cited in footnote 2, *supra,* are the only cases found which address the SIAA's application under such circumstances.

Vessel, but shall not be under Charterer's orders as regards navigation, care and custody of the Vessel and care of the cargo.

Additionally, article 21(a), in its last sentence, states that, "[t]he Owner shall pay for all expenses incurred in the navigation and management of the Vessel, except as otherwise specifically provided herein."

Reading these articles together, the intent of the time-charter agreement leaves VCI with responsibility for the crew of the SS SANTA ADELA, and, presumably, for any personal injuries sustained by the crew while carrying out its duties. None of the articles of the time-charter agreement unambiguously articulate an intent to pass liability for a seaman's personal injury to the United States.[4] Thus, VCI is required to defend against plaintiff's admiralty claim, which alleges his personal injury while a crewmember aboard the SS SANTA ADELA. Indeed, it would be anomalous to allow VCI, as a private ship owner and private employer, to relieve itself of any obligations to its crew by entering into a contract with a third-party, albeit the United States.

## CONCLUSION

Defendant's motion to dismiss the action under the Suits in Admiralty Act, or, in the alternative, for summary judgment is denied.

SO ORDERED.

---

**4.** Article 6(g), one of the indemnity provisions in the time-charter agreement, provides in part: "The Charterer shall indemnify and hold harmless the Owner ... from the losses, expenses and liabilities proximately caused by compliance with any orders or directions of the Charterer ... except those properly chargeable to the Owner under any insurance carried by the Owner...." A fair reading of this article indicates that VCI may be able to bring suit against the United States for indemnification.