Robert G. NELSEN, Plaintiff,

v.

RESEARCH CORPORATION OF the UNIVERSITY OF HAWAII, Defendant.

Civ. No. 89–00738 DAE.

United States District Court, D. Hawaii.

Nov. 26, 1990.

As Amended Jan. 15, 1991.

Douglas M. Fryer, Mikkelborg Broz Wells & Fryer, Seattle, Wash., James R. Moore, Reinwald O'Connor Marrack Hoskins & Playdon, Honolulu, Hawaii, for plaintiff.

C. Andrew Waters, Keesal Young & Logan, Long Beach, Cal., David A. Nakashima, Rush Moore Craven Sutton Morry & Beh, Honolulu, Hawaii, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID A. EZRA, District Judge.

Defendant's summary judgment motion came on for hearing before this court on October 1, 1990. Michael J. McGuigan, Esq. appeared for plaintiffs Robert G. Nelsen and Patricia Nelsen ("plaintiff"[1]). C. Andrew Waters, Esq. appeared on behalf of defendant Research Corporation of the University of Hawaii ("defendant" or "RCUH"). The court having reviewed the motion and the memoranda, exhibits, and affidavits in support thereof and in opposition thereto, having heard oral arguments of counsel, and being fully advised as to the premises herein, DENIES defendant's motion for summary judgment under Fed. R.Civ.P. 56.

## BACKGROUND

In this admiralty case, plaintiff Robert Nelsen seeks recovery under the Jones Act, 46 U.S.C.App. §§ 688, and maritime common law for emotional and psychological injuries allegedly sustained while he served as captain of an oceanographic research vessel, the Kila, from July 1984 to May 1987. Plaintiff Patricia Nelsen asserts a loss of consortium claim.

Plaintiff alleges defendant maintained the Kila negligently and ignored plaintiff's concerns about the vessel's safety. As a result, plaintiff maintains he suffered nightmares, anxiety attacks, and other psychological injuries. In particular, he asserts 1) that on September 27, 1986, the

---

**1.** The singular "plaintiff" will be used in this Order to refer collectively to both Robert and

Kila's engine overheated and threatened to detonate explosives stored on board; 2) that on January 27, 1987, the Kila took on water and nearly sank; and 3) that from October 1986 to May 1987, problems with the vessel's controls rendered diving operations unsafe. Plaintiff contends these incidents, which occurred while he piloted the Kila in waters surrounding the Hawaiian Islands, gave rise to his emotional and psychological injuries.

Defendant now moves for summary judgment, arguing this court lacks subject matter jurisdiction because the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752 ("SIAA"), provides that plaintiff's exclusive remedy is against the United States, the Kila's owner.

## DISCUSSION

A. *Summary Judgment Standard*

■ Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Retail Clerks Union, Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030 (9th Cir.1983). In ruling on defendant's motion, this court views the facts and inferences in the light most favorable to plaintiff. *Id.*

■ The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979).

Patricia Nelsen.

**B.** *The Suits in Admiralty Act*

█ Section 745 of the SIAA contains an exclusivity clause. It states:

> ... *where a remedy is provided* by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against *the agent or employee of the United States* or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim.

(Emphasis added). The SIAA does not itself provide a cause of action; it operates merely as a waiver of the United States' sovereign immunity in admiralty suits. *Nelson v. United States*, 639 F.2d 469, 473 (9th Cir.1980). A congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States under admiralty law or otherwise. *Roberts v. United States*, 498 F.2d 520, 525 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). The actual source of an admiralty claim against the United States is either maritime common law or statute. *Williams v. United States*, 711 F.2d 893, 895 (9th Cir.1983).

Here, that statute is the Public Vessels Act, 46 U.S.C.App. §§ 781–790 ("PVA"), which courts construe together with the SIAA. *See Aliotti v. United States*, 221 F.2d 598 (9th Cir.1955); *see also Guidry v. Durkin*, 834 F.2d 1465, 1472 (9th Cir.1987) (SIAA and PVA are "interrelated"). Thus, to determine whether "a remedy is provided" within the meaning of SIAA section 745, this court looks to the PVA.

**1. Whether the Kila is a Public Vessel**

█ Section 781 of the Public Vessels Act provides that suits in admiralty may be brought against the United States "for damages caused by a *public vessel of the United States*" (emphasis added). RCUH

may not invoke the exclusivity clause of SIAA section 745 unless the Kila is a public vessel within the meaning of PVA section 781. *See Santos v. RCA Serv. Co.*, 603 F.Supp. 943, 946 (E.D.La.1985).

█ A vessel owned by the government and used for a public purpose by a private party according to the government's direction is a "public vessel" under section 781. *Petition of United States*, 367 F.2d 505, 509 (3rd Cir.1966) (citations omitted), *cert. denied*, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967); *Santos*, 603 F.Supp. at 946 (suggesting government *ownership* alone is sufficient to invoke the exclusivity provision of section 745).

In the instant case, the parties do not dispute the Kila is owned by the United States. *See* Defendant's Memorandum of Points & Authorities at 8 and Affidavit of Judy Rubano, attached as Exhibit "G"; Plaintiff's Memorandum in Opposition at 12. The charter agreement between the United States Office of Naval Research and the University of Hawaii, *see* Exhibit "A" to Defendant's Memorandum, is replete with language demonstrating clearly that defendants acquired no ownership interest in the Kila.[2]

In addition, the agreement contemplated defendant would operate the Kila for a public purpose. For instance, the preamble provides that "the Secretary of the Navy ... has determined that it is *in the best interests of the Government* to lease ... [the Kila] for use by the Charterer in the performance of ... oceanographic research work." *See* Exhibit "A" (italics added). The next paragraph states, "the Secretary has determined that it will be *in the public interest* to let the Vessel to the Charterer...." *Id.* (italics added). Further, by

---

**2.** *See, e.g.,* Article 2 ("the Charterer hereby *hires* the Vessel"); Article 3(a) ("The Charterer shall have the *right to use* the Vessel"); Article 5 ("Title to the Vessel shall remain in the Government"); Article 6(b) ("The Department shall have the right at any time to make inspections as reasonably might be determined necessary to ascertain the condition of the Vessel"); Article 9

(Charterer must notify all personnel, suppliers, and repair yards "that title to the Vessel is vested in the United States of America and is not subject to any lien whatsoever").

The charter agreement refers to the vessel as the "Galaxy 10." The "Galaxy 10" was renamed "Kila" on September 17, 1983. *See* Plaintiff's Memorandum in Opposition at 4.

the terms of the agreement, the defendant's use of the vessel is restricted to

the performance of oceanographic research for the Government and time permitting for other oceanographic research work which may be financed by State or other public agencies, but only to the extent that such other work does not exceed 25% of the total use of the Vessel during any fiscal year; provided that the Contracting Officer may authorize use in excess of such 25% on such terms and conditions as he may prescribe. The Charterer may, in addition, use the Vessel for one or more training voyages, the cumulative total of which shall not exceed 60 days in any fiscal year, for the training of students. . . .

Article 3(a), Exhibit "A".

Based on the charter agreement and the undisputed fact that the United States owned the Kila, there is no genuine issue of material fact as to whether the Kila was a public vessel so as to provide plaintiff a cause of action under PVA section 781.

2. Whether a Cause of Action Could be Maintained if the Kila were Privately Owned

■ Even if the Kila is a public vessel, SIAA section 742 precludes application of the exclusivity clause unless plaintiff's suit is also one that could be maintained if the Kila were privately owned. 46 U.S.C.App. § 742; *see also United States v. United Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976) (discussing thoroughly the legislative history of both the SIAA and the PVA); *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1063 (5th Cir.1989), *cert. denied*, — U.S. —,

110 S.Ct. 843, 107 L.Ed.2d 837 (1990); *Roberts*, 498 F.2d at 525.

Because the inquiry under section 742 is strictly jurisdictional, i.e., is plaintiff's claim cognizable under the general admiralty jurisdiction of 28 U.S.C. § 1331, that inquiry is in no way directed toward the merits, i.e., would the plaintiff actually recover on the present facts if he were suing a private vessel owner. *See Roberts*, 498 F.2d at 525; *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 445 (5th Cir.1982) (applying the test for admiralty jurisdiction announced in *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)).

■ A claim for personal injuries is within the district courts' admiralty jurisdiction if the actions complained of occurred on or over navigable waters and the alleged wrong bears a significant relationship to traditional maritime activity. *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504;[3] *Guidry*, 834 F.2d at 1469. Neither party addresses, and it appears beyond dispute, that plaintiff's injuries here occurred on navigable waters. *See Williams*, 711 F.2d at 896 (waters of the Pacific Ocean are navigable waters).

Applying *Executive Jet* in a case quite similar to the one at bar, this court held specifically that the families of oceanographic research workers, who presumably drowned when their research vessel disappeared in the waters surrounding the Hawaiian Islands, were entitled to federal maritime remedies for those wrongful deaths. *See In re Holoholo Litigation*, 557 F.Supp. 1024, 1029 (D.Haw.1983).[4] This court found the circumstances of the oceanographers' deaths bore a significant relationship to traditional maritime activity.

---

3. Although *Executive Jet* involved an airplane that crashed into navigable waters, both the Supreme Court and this district court have specifically extended the test announced in *Executive Jet* beyond the aviation context. *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982), *rhn'g denied*, 459 U.S. 899, 103 S.Ct. 198, 74 L.Ed.2d 160 (1982); *In re Holoholo*, 557 F.Supp. 1024, 1028 (D.Haw.1983).

4. *Cf. Martin v. Grace Line, Inc.*, 322 F.Supp. 395 (E.D.Cal.1970). The court held that a crew member who suffered personal injury while serving on a vessel owned by the United States had an action against the government under the SIAA where the vessel was operated by a steamship company serving as general agent. Although the court did not expressly consider section 742 or address whether a suit in admiralty would lie if the vessel were privately owned,

*Id.;*[5] *see also Nelson,* 639 F.2d at 472–73 (admiralty jurisdiction exists over wrongful death action brought by wife of seaman killed as a result of government's alleged failure to observe adequate safety precautions on vessel).

The Fifth Circuit held similarly in *Trautman,* finding the district court did have admiralty jurisdiction over a tort claim brought against the United States by a salvage diver injured as a result of improper diving procedures. 693 F.2d at 445. The diver's employer was a private salvage company hired as a subcontractor by the private general contractor the government engaged. The court found the government maintained no control over the day-to-day operation of the salvage activities, *id.* at 443, and concluded the United States owed no duty of seaworthiness to the plaintiff, *id.* at 444. It nevertheless determined the plaintiff's claims against the government were cognizable in admiralty. *Id.* at 445.

Finally, the Ninth Circuit ruled that where a vessel was destroyed by the negligence of a private construction company acting under contract with the United States, the owners' damage claim lay exclusively within admiralty jurisdiction. *See Watts v. Pinckney,* 752 F.2d 406, 407, 408 (9th Cir.1985).

The foregoing cases, and in particular *Holoholo,* establish conclusively that plaintiff's claim for emotional and psychological injuries could be maintained in admiralty if the Kila were privately owned. Plaintiff Robert Nelsen was acting in his capacity as captain of the Kila when he sustained his alleged injuries. The asserted cause of those injuries was the Kila's unseaworthiness. Clearly, a vessel's unseaworthiness and any related injuries bear a significant relationship to traditional maritime activity.

■ In finding that this court would have jurisdiction under section 742 over a claim against the United States as owner of the Kila, this court expresses no opinion as to the merits of that hypothetical claim. As noted above, in restricting the SIAA's waiver of immunity to those cases that could be maintained if the vessel were privately owned, section 742 does no more than state the terms by which the United States consents to *in personam* jurisdiction. *See Williams,* 874 F.2d at 1062 (section 742 merely provides a "jurisdictional hook" on which to hang a claim against the government). Plaintiff misconstrues section 742 as mandating an evaluation of his chances for success on the merits if he were to bring an action against the United States. He contends that although the government may have had the right to designate the Kila's ports and voyages, such a right, if held by a private party, would provide an insufficient basis for holding that private party liable. Therefore, plaintiff argues, under section 742 it is also insufficient to support a claim against the United States.

Plaintiff confuses the question whether he could actually recover against the United States on the merits of his hypothetical claim with the narrower jurisdictional inquiry sufficient to satisfy section 742.[6] Given the interpretation plaintiff urges,

such a finding was necessary to its holding that section 745 precluded suit against the agent.

5. Interestingly, defendant RCUH was also a defendant in *Holoholo,* and it operated the vessel in that case pursuant to an arrangement similar to the one found here. RCUH chartered the Holoholo under a subcontract with the University of Hawaii, which in turn operated under a subcontract with the University of California, which had contracted with the United States Department of Energy, the vessel's owner. *Id.* at 1026.

6. In support of his position that the United States would not be liable for the Kila's unseaworthiness, plaintiff cites *Reed v. Steamship Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), *rhn'g denied,* 375 U.S. 872, 84 S.Ct. 27, 11 L.Ed.2d 101 (1963) and *superseded by statute on other grounds as stated in Kelly v. Pittsburgh & Conneaut Dock Co.,* 900 F.2d 89, 93 (6th Cir.1990). Plaintiff's Post–Argument Brief at 4. However, *Reed* says only that a bareboat charterer and operator of a ship is charged with an obligation of seaworthiness. *Id.* at 415, 83 S.Ct. at 1353. The Court expressly reserved the question whether a bareboat charter also absolves the vessel's owner from liability on a warranty of seaworthiness. *Id.* at 411 n. 1, 83 S.Ct. at 1351 n. 1. In any event, that issue goes to the merits of plaintiff's claim, which this court does not reach under section 742 analysis.

section 742 would require this court to conduct a mini-trial to determine whether plaintiff would in fact prevail against the United States. Section 742 sets forth no such requirement.

Flowing from his misinterpretation of section 742 is plaintiff's misplaced reliance on *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir.1989). Plaintiff misstates the holding of that case. *See* Plaintiff's Post–Argument Brief at 4–5. In *Williams*, the Fifth Circuit found that where the government time-chartered a vessel from its private owner but exercised no control over its operations, a private person in the government's position *could* be subject to suit in admiralty for alleged medical negligence resulting in the death of a seaman employed by the vessel's owner. 874 F.2d at 1062. Thus, section 742 did provide a jurisdictional hook for the plaintiff's claim. *Id.*

While the *Williams* court went on to hold that under relevant maritime law the plaintiff's admiralty claim would ultimately fail, it predicated that holding specifically on the United States' capacity as a time-charterer with no ownership interest in the vessel and no control over its operations. *Id.* (interpreting and applying section 745, not section 742). Moreover, it was only after the court concluded that the ship in question was not a public vessel that it analyzed the merits of plaintiff's common law tort claim.

*Williams* is readily distinguishable from the instant case. Here, the United States is not a time-charterer; it is the owner of the Kila. Thus, maritime common law defining the duties of time-charterers, on which the Fifth Circuit's decision turned, is wholly inapplicable here. More importantly, the Kila, unlike the ship in *Williams*, is a public vessel. Therefore, it is the PVA and not maritime common law that "provide[s] a remedy" within the meaning of section 745. As such, no inquiry into the merits of plaintiff's claim is necessary. *Williams* proposes a test for determining when a *private* shipowner time-chartering its vessel to the United States is absolved from liability by section 745. Such a test has no application to the present facts.[7]

Under section 742 and the test for admiralty jurisdiction stated in *Executive Jet*, this court would have had jurisdiction over a claim against the United States had plaintiff elected to bring one. Accordingly, the court may now consider the effect of the exclusivity clause in section 745.

### 3. Whether RCUH is an Agent Under 46 U.S.C.App. § 745

Having found that plaintiff has a remedy under the Public Vessels Act and that section 742 would have provided a jurisdictional basis for a claim against the United States, the court now decides whether the exclusivity clause of section 745 bars plaintiff's suit against RCUH. That clause will not bar the present suit unless RCUH is an "agent" of the United States.

In enacting section 745, Congress intended the general statement of an agency concept to include "any instrumentality through and by which public vessels [are] operated." *Petition*, 367 F.2d at 510. As used in section 745, the term "agent" includes "any person, partnership, association, or corporation engaged by the United States to manage and conduct the business of a vessel owned ... by the United States." *Id.* (clause in section 745 that waives the statute of limitations must be read *in pari materia* with the section's exclusivity clause).

Thus, a contract operator of a public vessel owned by the United States may be an "agent", even though its day to day operation of the vessel is not subject to government control. *Id.* at 509; *cf. San-*

---

**7.** Plaintiff also relies mistakenly on *Padro v. Vessel Charters, Inc.*, 731 F.Supp. 145 (S.D.N.Y. 1990), for the proposition that a private party in the government's position would not be liable. *Padro* involved circumstances nearly identical to those in *Williams,* and the court applied the *Williams* analysis without question to a sea-

man's claim that the unseaworthiness of a vessel time-chartered to the United States, caused his personal injuries. As in *Williams,* the PVA did not provide a remedy. Moreover, the *Padro* court found, consistent with this court's holding, that plaintiff's claim was "one to be heard in an admiralty proceeding." *Id.* at 147.

*tos,* 603 F.Supp. at 947; *see also Bowman v. Pan American World Serv., Inc.,* 704 F.Supp. 695, 697 (E.D.La.1989) (contractor that conducts the business of the United States pursuant to contract and maintains, operates, services, and repairs a public vessel is an agent for purposes of section 745). Moreover, contrary to what plaintiff urges, a charterer who is an owner *pro hac vice* may still be an agent. *See Smith v. United States,* 346 F.2d 449, 453 (4th Cir.1965) (immaterial whether charter agreement constitutes vessel operator a bareboat charterer, owner *pro hac vice,* or independent contractor), *cert. denied,* 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965); *Lovetro v. United States,* 602 F.Supp. 574 (S.D.N.Y. 1984).

Plaintiff asks this court to look beyond the cooperative relationship contemplated by the charter agreement and to acknowledge the reality of the United States' lack of involvement with the Kila's operation. He claims that although the charter agreement gave the government the right to inspect the vessel and direct its use, the government in fact never inspected the vessel after turning it over to the University of Hawaii and never interfered with RCUH's plans for its use. Rather, "RCUH took complete control of the vessel and operated it as its own vessel in all respects concerning scheduling, budgeting, manning and repair...." Plaintiff's Post–Argument Brief at 4.

Having urged the court to look past the four corners of the charter agreement, plaintiff goes on to argue somewhat inconsistently that the terms of the agreement are nevertheless binding. Plaintiff emphasizes particularly Article 3(f) of the charter agreement, which states:

In performing any work authorized or approved under this Charter Party, *the Charterer shall not act as or be considered an agent for the Government,* and no provision of this Charter Party is intended to, nor shall be deemed to, establish or create an agency relationship between the parties.

Exhibit "A" (emphasis added). Plaintiff claims this provision precludes a finding that defendant was the government's agent for purposes of section 745. Defendant responds that Article 3(f) cannot be given the effect plaintiff suggests because to do so would violate public policy. It maintains the government may not legally contract out of potential liability and that any language designed to vitiate the exclusivity provision of section 745 is void as a matter of law.[8]

This court finds it unnecessary to decide whether Article 3(f) violates public policy. There is ample evidence, quite apart from Article 3(f), to raise a genuine issue of material fact as to whether RCUH acted as the government's agent in operating the Kila.

The parties agree defendant manned, equipped, and maintained the vessel. *See* Defendant's Memorandum at 8; Plaintiff's Memorandum at 6 and Affidavit of Robert Nelsen.[9] Moreover, defendant does not deny that it exercised virtually exclusive control over the Kila, and it offers nothing to refute plaintiff's assertion that "no one outside the University ever issued any directions for operation or repair." Plaintiff's Post–Argument Brief at 4.

Defendant relies instead on the charter agreement's restrictions concerning the Kila's use. *See* Defendant's Response to Plaintiff's Opposition at 2–5. It refers the court to the broad language of section 745,

---

**8.** Defendant refers the court to *Stevens Institute of Technology v. United States,* 396 F.Supp. 986 (S.D.N.Y.1975), which is wholly inapposite to the facts here. In *Stevens,* the court held in violation of public policy a contract clause that purported to exculpate the United States from liability for its own negligence in delivering a vessel to a private purchaser who was given no control over the delivery operations. No third party was involved, and the common law of contracts governed, not the SIAA.

**9.** The fact that defendant manned, equipped, and maintained the Kila does not alter the conclusion that it used the Kila as a public vessel to conduct oceanographic research as contemplated by the charter agreement. Defendant was *required* to man, equip, and maintain the vessel by the charter agreement. *See, e.g.,* Article 6(a), Exhibit "A."

which speaks in terms of "any person, partnership, association, or corporation engaged by the United States to manage and conduct the business of a vessel owned or bareboat chartered by the United States," and to case law holding that the terms "employee" and "instrumentality" may be used interchangeably with the term "agent." *See* Defendant's Post–Hearing Memorandum at 2.

In opposition, plaintiff has submitted evidence that the Office of Naval Research, which executed the charter agreement on behalf of the United States, never intended to accept financial responsibility for any expenses related to the Kila's "operation, maintenance and general support." *See* Exhibit "1," Plaintiffs' Supplemental Exhibit in Opposition, filed 28 September 1990 (letter from Wesley L. Lovaas, Head of the Navy's Ship Management Office, to J. Frisbee Campbell of the University of Hawaii, dated 24 April 1985).

The charter agreement's indemnity provision buttresses plaintiff's position. Article 7(f) provides:

> Except to the extent (if any) that the Government shall have assumed the risk of such liabilities under the provisions of any contract involving the use of the Vessel, *the Charterer shall bear the risk of liabilities for, and shall hold the Government harmless against, claims on account of bodily injury* or death of persons . . . arising out of or in any way connected with the use, possession, or handling of the Vessel by the Charterer.

Exhibit "A" (emphasis added).

Defendant does not challenge Article 7(f) on public policy grounds, and plaintiff here is not arguing that Article 7(f) supplants the remedies provided by the SIAA and the PVA.[10] Article 7(f) does not say the United States may not be sued. Rather, it provides that in the event suit is brought against the United States, the government may in turn sue RCUH for indemnification. *Cf. Padro,* 731 F.Supp. at 149 n. 4. Article

7(f) does no more than evidence the intent of RCUH and the United States to allocate ultimate financial liability for the personal injuries of crewman to RCUH. As such, it is not subject to the same public policy challenge defendant voices to Article 3(f).

Coupled with Article 7(f), plaintiff's evidence showing that RCUH exercised virtually total control over the Kila's operations prevents summary judgment on the issue whether SIAA section 745 precludes suit against RCUH as an agent of the United States. Plaintiff has submitted significant probative evidence tending to support his theory that RCUH did not act as the United States' agent in operating the Kila.

## C. *The Primary Duty Doctrine*

■ Defendant argues, as an alternative basis for summary judgment, that plaintiff's suit is barred by his breach of the duty to maintain the Kila in a safe and seaworthy condition. Defendant does not contend plaintiff took no steps to insure the vessel's safety; rather, it maintains that the steps he did take were inadequate and that he performed his duty negligently. For example, plaintiff did inspect the vessel for leaks prior to the January 27, 1987 incident in which the Kila nearly sank, but he apparently did not check the bilge pumps. *See* Defendant's Memorandum in Support of Motion for Summary Judgment at 12.

■ Initially, the court notes that a bareboat charterer ordinarily bears the traditional obligation of ensuring a vessel's seaworthiness. *Reed,* 373 U.S. at 415, 83 S.Ct. at 1353. However, even if plaintiff could somehow be charged with insuring the Kila's seaworthiness, whether he performed that obligation negligently is a disputed question of fact. As such, summary judgment under the primary duty doctrine is inappropriate.

---

**10.** At least one court has rejected the argument that an indemnification clause by which an agent assumes liability for losses on the vessel creates law of the contract that supplants the PVA and the SIAA. *See Santos,* 603 F.Supp. at 948; *cf. Smith,* 346 F.2d at 454 (Congress unquestionably has power to withhold from crewmen working on publicly owned but privately operated vessel the right to sue the contractor).

## CONCLUSION

The court finds that a genuine issue of material fact exists as to whether RCUH acted as the government's agent in its operation of the Kila. The court further concludes that the issue of plaintiff's contributory fault precludes summary judgment under the primary duty doctrine. Accordingly, this court DENIES defendant's motion for summary judgment.

IT IS SO ORDERED.