Argued and submitted April 17, affirmed October 30, 1996

Robin A. GAUSSOIN,
*Respondent,*

*v.*

PORT OF PORTLAND,
*Defendant,*

CASCADE GENERAL, INC.,
an Oregon corporation,
*Appellant,*

BRIX MARITIME,
a Delaware corporation,
*Appellant.*

CASCADE GENERAL, INC.,
an Oregon corporation,
*Cross-Claim Plaintiff - Cross-Claim
Defendant - Respondent,*

*v.*

BRIX MARITIME,
a Delaware corporation,
*Cross-Claim Defendant - Cross-Claim
Plaintiff - Appellant.*

(9108-04955; CA A84301)

927 P2d 601

Carl R. Neil argued the cause for appellant Brix Maritime. With him on the briefs were Thomas E. McDermott, Robin A. Jones and Lindsay, Hart, Neil & Weigler.

Alfred J. Rufty, III argued the cause for appellant and respondent Cascade General, Inc. With him on the briefs were Christopher W. Angius, Perkins Coie, Alexander N. Breckinridge IV, O'Neil, Eichin, Miller, Breckinridge & Saporito and Machale A. Miller.

Lawrence Baron argued the cause and filed the brief for respondent Robin A. Gaussoin.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Defendant Cascade General, Inc. (Cascade), a shipyard, was performing repairs to the USNS MERCURY, an ocean-going vessel owned by the United States Navy. In carrying out its work, Cascade was required to move the MERCURY from its berth to a drydock in the Port of Portland. Plaintiff, a seaman, worked for defendant Brix Maritime (Brix) as a deck hand aboard the tug CLARKSTON, the vessel that was assisting the movement of the MERCURY. Plaintiff was injured when a line from the MERCURY broke and struck him as it was being transferred in the course of "making up" the tug to the vessel.

Plaintiff brought this admiralty action against Cascade, alleging negligence and breach of the warranty of workmanlike service, and against Brix alleging unseaworthiness of the CLARKSTON. Cascade cross-claimed against Brix for indemnity pursuant to the provisions of its contract with Brix. It also cross-claimed for contribution against Brix. Brix cross-claimed against Cascade for indemnity for all amounts that it had paid to plaintiff or that it might be held liable for on the theory that, as owner *pro hac vice* of the MERCURY, Cascade had breached a warranty of seaworthiness to Brix.

The jury returned a verdict for plaintiff on his claims against Cascade and Brix. The jury also found that Cascade was the owner *pro hac vice* of the MERCURY and held that it had breached an implied contractual warranty to supply Brix a seaworthy tow. The court entered judgment on plaintiff's verdicts against Cascade and Brix for the amount of his damages and entered judgment for Brix against Cascade for indemnification of Brix in the amount that it had paid to plaintiff in maintenance and cure benefits, and also requiring Cascade to indemnify Brix for any sum that Brix was required by judgment to pay to plaintiff. On Cascade's claim for contribution against Brix, the jury found that Brix was 20 percent negligent and Cascade was 80 percent negligent in causing plaintiff's injury. The jury further found that Cascade was not entitled to indemnity under the terms of its contract with Brix. Despite the fact that the jury determined that Brix was negligent, the effect of its determination that Brix was entitled to indemnification from Cascade meant

that Brix would be reimbursed by Cascade for any amounts it paid or had paid to plaintiff, including maintenance and cure benefits.

Cascade filed motions for judgment notwithstanding the verdicts (*n.o.v.*) in favor of plaintiff and Brix, and for new trial. The court granted the motion for judgment *n.o.v.* on Brix's cross-claim for indemnity and entered judgment for Cascade on its cross-claim for contribution against Brix. The effect of the court's ruling was that Cascade would not have to reimburse Brix for the maintenance and cure benefits that Brix had paid to plaintiff or for the amount that Brix was obligated to pay to plaintiff by virtue of its negligence. The court denied Cascade's motion for judgment *n.o.v.* on plaintiff's claims against Cascade and denied Cascade's motion for new trial.

Cascade appeals from the judgment for plaintiff, raising three assignments of error. Its first contention is that the court should not have rejected Cascade's motion for judgment *n.o.v.* or alternatively for a new trial because it is immune from liability as an agent of the United States pursuant to the Suits in Admiralty Act, 46 USC § 741, *et seq* (SAA), and the Public Vessels Act, 46 USC § 781, and its immunity is a jurisdictional bar to this claim against Cascade.

■■ Cascade raised the question of its immunity for the first time in its motion for judgment *n.o.v.* Ordinarily, the denial of a motion for judgment *n.o.v.* is not reviewable, because it is deemed not to have preserved the error for review in the absence of a motion for directed verdict. Berhanu v. Metzger, 119 Or App 175, 178, 850 P2d 373, *rev den* 318 Or 60 (1993), *cert den* 511 US ____ , 114 S Ct 2100 (1994). Cascade asserts, however, that "the legal conclusion of agency" flows in this case from undisputed facts, and that, if it is immune from liability as an agent of the United States, then the issue raised by its motion concerns the jurisdiction of the court and therefore may be raised at any stage of the proceeding. *Mullens v. L.Q. Development*, 312 Or 599, 608, 825 P2d 1376 (1992). We address Cascade's assignment, because Cascade is correct that, under the SAA state courts do not have subject matter jurisdiction over claims against

agents of the United States. We conclude, nonetheless, that the state courts have jurisdiction of plaintiff's claims against Cascade, because the record shows, as a matter of law, that Cascade was not an agent of the United States.

■ All courts are divested of jurisdiction of actions *in personam* against a vessel owned by or operated for the United States. 46 USC § 741. To offset the divestiture of a seaman's common-law right to sue a U.S. vessel, Congress has provided for waiver of sovereign immunity for actions that would otherwise have been brought against the vessel, so that the injured seaman can sue the United States directly, as the owner of the vessel, or as the principal for whom an agent is conducting the business of the vessel on behalf of the United States. *Rollins v. Board of Governors for Higher Educ.*, 761 F Supp 933, 937 (D RI 1991). Because of confusion about whether seamen should bring their actions against the United States or against the agent-operators or both, in 1950, Congress amended the SAA to provide that when an action is available against the United States, the agent or employee responsible for the injury is immune from suit, and the claim must be made exclusively against the United States. 46 USC § 745.[1] Thus, if Cascade was acting as an agent of the United States, the United States is the exclusive party to whom a claim for loss should be directed, and the sole remedy is an action against the United States in federal court. If Cascade was not an agent of the United States, then plaintiff is entitled to maintain this maritime action against it pursuant to 28 USC § 1333, the "saving to suitors"

---

[1] 46 USC § 745 provides, as relevant:

"Suits as authorized by this chapter may be brought only within two years after the cause of action arises: *Provided,* That where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim: *Provided further,* That the limitations contained in this section for the commencement of suit shall not bar any suit against the United States brought hereunder within one year after December 13, 1950, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law was timely commenced and was or may hereafter be dismissed solely because improperly brought against any person, partnership, association, or corporation engaged by the United States to manage and conduct the business of a vessel owned or bareboat chartered by the United States or against the master of any such vessel."

clause, which preserves a maritime suitor's election to pursue common-law remedies in state court. The question here, then, turns on the meaning of the term "agent" as used in section 745.

■■ Because plaintiff's accident occurred on board a vessel in navigable waters while plaintiff was in the course of carrying out his duties as a deckhand, this action falls within admiralty jurisdiction, *Guidry v. Durkin*, 834 F2d 1465, 1469 (9th Cir 1987), and is governed by substantive rules of maritime law, whether the claim is pursued in state or federal court. *Genetics Intern. v. Cormorant Bulk Carriers, Inc.*, 877 F2d 806, 808 (9th Cir 1989). Federal law requires that, to the extent that we are able, we determine the meaning of the term "agent" as used in section 745 by reference to the text of the statute, construed *in pari materia*. *Petition of United States*, 367 F2d 505, 510 (3d Cir 1966), *cert den sub nom Allen v. Mathiasen's Tanker Indus., Inc.*, 386 US 932 (1967); *Nelson v. Research Corp. of University of Hawaii*, 752 F Supp 350, 356 (D Haw 1990).

Immediately following the exclusivity provision is a provision in section 745 granting a waiver of the statute of limitations in cases brought within one year after the date of the statute's enactment erroneously against "any person, partnership, association or corporation engaged by the United States to manage and conduct the business of a vessel owned or bareboat chartered by the United States or against the master of any such vessel." 46 USC § 745. Reading the exclusivity clause and the waiver provision *in pari materia*, federal courts have held that the general term "agent" as used in section 745 means the same kinds of contractual relationships described in the waiver provision, *i.e.*, those engaged by the United States "to manage and conduct the business of" a government vessel, suggesting that the exclusivity clause is to apply to general agents who manage and conduct *the business of the vessel*, not to those who just perform some service on the vessel. *Petition of United States*, 367 F2d at 510. Private contractors are considered to be agents of the United States only if they are conducting governmental maritime activity aboard the vessel. *Servis v. Hiller Systems Inc.*, 54 F3d 203, 207-09 (4th Cir 1995). Under the terms of its contract with the government, Cascade had no authority to

conduct the maritime business of the vessel. This is shown by the fact that military personnel were to be permitted aboard the vessel for that purpose. Cascade's only responsibility was to make the necessary repairs. Thus, Cascade was not an "agent" of the United States within the meaning of section 745.

Federal courts agree that in determining whether an entity is acting as an agent of the government for purposes of immunity under the SAA, the primary factor is the degree of control exercised by the United States over the defendant's operations. *Nelson*, 805 F Supp at 847; *see Trautman v. Buck Steber, Inc.*, 693 F2d 440, 445 (5th Cir 1982) (degree of United States' operational control determines agency status under Jones Act). That determination must be made by examining the entity's contract with the government, as well as its conduct. *Rollins*, 761 F Supp at 935.

Assuming, for the sake of this discussion only, that an agreement that provides for less than full maritime operational control of the vessel by the contractor can give rise to an agency relationship for purposes of immunity under the SAA, the contract here does not provide for the type of operational control of Cascade's business by the United States that would show that Cascade was an agent of the United States for purposes of section 745. The contract, which is entitled "Master Agreement for Repair and Alteration of Vessels," refers to Cascade as "contractor," not "agent." It establishes the general requirements that allow the government to solicit repair bids from "prospective contractors," which it can either accept or reject. It provides for delivery of the ship into the contractor's custody only for repairs. Cascade was responsible for furnishing materials, labor, services, equipment, supplies, power, accessories, facilities and such other things necessary to accomplish the work specified in the job order. The government agreed to leave the correctness of the job order to the contractor. The contract provides that although the contractor is to give government crew access to the vessel, such crew is not to interfere with the repair work and is to have access to the vessel only "to perform and fulfill their

respective obligations to the Government on a noninterference basis," and to "comply with all Contractor rules and regulations governing personnel at its shipyard." The government has the right to ensure the contractor's performance with the job order and to control dock or sea trials, but not to control the repair contractor's business operations. Cascade was not subject to the control of the government with respect to its performance of the repair work. Contrary to Cascade's contention, we conclude that if a repair contractor can be regarded as an agent of the United States, it is only if the United States has operational control of the business of the repair contractor. *Servis v. Hiller Systems Inc.*, 54 F 3d at 208. That control was not present here.

For its second and third assignments of error, Cascade asserts that the trial court should have granted its motions, made after submission of all the evidence, seeking a directed verdict dismissing plaintiff's claims, because plaintiff failed to put on sufficient evidence to show that his back condition and disability were caused by the accident or that his damages occurred as a result of Cascade's negligence. In considering the court's rulings, we view the evidence in the light most favorable to plaintiff, *James v. Carnation Co.*, 278 Or 65, 67, 562 P2d 1192 (1977), and will not overturn the jury's verdict unless we can say affirmatively that there is *no* evidence from which the jury could have made the required findings. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). The question is close with respect to both rulings. We have examined the transcript thoroughly. It would serve no purpose, however, to describe the evidence in detail. Suffice it to say that under our standard of review of the record, plaintiff's evidence was sufficient to require the court to submit the claims against Cascade to the jury.

Brix Maritime seeks review of two rulings of the trial court: (1) the entry of judgment for Cascade notwithstanding the verdict for Brix on Brix's cross-claim for indemnification of plaintiff's judgment against Brix for unseaworthiness, holding that Brix as a matter of law is not entitled to indemnification from Cascade for the 20 percent of fault and related damages attributed to Brix by the jury; (2) the trial court's ruling denying Brix's motion to amend its pleadings after

judgment to assert a claim against Cascade for contribution in payment of maintenance and cure benefits.

Brix asserted entitlement to indemnification from Cascade under the doctrine of indemnity set forth in *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 US 124, 76 S Ct 232, 100 L Ed 133 (1956). In *Ryan*, a longshore worker and employee of Ryan Stevedoring was injured while working with cargo aboard Pan-Atlantic's ship. Ryan's longshore workers stowed cargo under the immediate supervision of their hatch foremen, but Pan-Atlantic officers had authority to reject unsafe stowage. The worker was injured when cargo that had been improperly stowed fell on him. He filed an action against Pan-Atlantic on theories of negligence and unseaworthiness, and the jury rendered a general verdict in his favor. Pan-Atlantic filed a third-party action for indemnity against Ryan on an implied warranty theory, based on Ryan's improper stowage of the cargo. The court held that despite the absence of an express agreement to indemnify, Ryan owed the shipowner an implied contractual duty to stow the cargo properly and safely—a warranty of workmanlike service. 350 US at 133. Pan-Atlantic's duty to supervise the stowage and reject unsafe stowage did not bar its recovery for Ryan's improper performance of the implied contractual warranty of workmanlike service. The court held that, because of the breach of its warranty of workmanlike service, Ryan could be required to indemnify Pan-Atlantic.

■ We agree with Cascade that the warranty of workmanlike service is at the heart of the *Ryan* indemnity doctrine. The doctrine was developed for the express purpose of easing the burden imposed on a shipowner by the shipowner's warranty of seaworthiness, which rendered it liable irrespective of fault when a shipboard injury occurred due to an unseaworthy condition on the vessel, even when the unseaworthy condition was caused by a stevedore to whom the shipowner had entrusted unsupervised control of a facet of the vessel's operation. *Flunker v. United States*, 528 F2d 239, 242 (9th Cir 1975). To redress that perceived injustice, the Supreme Court held in *Ryan* that a stevedore impliedly warrants to the shipowner who hires it that it will perform its services of loading and unloading the vessel in a workmanlike manner. If the stevedore breaches that warranty of

workmanlike service and thereby creates an unseaworthy condition on the vessel that causes the injury, *Ryan* holds that the shipowner, who will as a result be liable in unseaworthiness, is then entitled to obtain indemnification from the stevedore. Unless the prospective indemnitor owes and has breached that particular *warranty of workmanlike service*, the right to *Ryan* indemnity does not arise. *Davis v. Chas. Kurz & Co., Inc.*, 483 F2d 184, 187 (9th Cir 1973).

■     Brix asserts that Cascade's breach of the warranty to provide a seaworthy tow also triggers the obligation to provide indemnification to Brix under *Ryan*. We disagree. There is no support in the case law for an expansion of the *Ryan* doctrine. Indeed, cases would appear to reflect that its application has been contained, if not curtailed, and that it has been applied *only* to relieve the burden imposed by the warranty of seaworthiness when the breach of that warranty has resulted from a contractor's breach of the warranty of workmanlike service. *Smith & Kelly Co. v. S/S Concordia Tadj*, 718 F2d 1022, 1027 (11th Cir 1983); *Agrico Chemical Co. v. M/V Ben W. Martin*, 664 F2d 85, 93 (5th Cir 1981); *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.*, 651 F2d 1096 (5th Cir 1981). As explained in *Flunker v. United States, id.*,

> "[t]he doctrine of unseaworthiness imposes a heavy burden on shipowners, who often are held vicariously liable for the acts of third persons causing injury to seamen * * *. To ease that burden the Supreme Court, in *Ryan* * * *, developed a theory of indemnification of the shipowner to permit recovery over against a third person for breach of the warranty of workmanlike performance." 528 F2d at 242.

In our view, it is inconsistent with the purpose of the *Ryan* doctrine to apply it so as to give rise to a duty of indemnification for breach of the seaworthiness warranty. We decline to extend *Ryan* indemnity to the circumstances of this case. Because it has not been alleged or established that Cascade owed to Brix and breached a warranty of workmanlike service, Cascade cannot be held liable to indemnify Brix under the *Ryan* doctrine. We therefore do not address Brix's contention that the negligence of the shipowner does not preclude indemnity under *Ryan*.

The jury awarded Brix indemnity for the maintenance and cure benefits that it had paid to plaintiff and for any sum that Brix was required by judgment to pay to plaintiff. The trial court's apparent basis for granting Cascade's motion for a judgment *n.o.v.* on that judgment was that Brix was not entitled to indemnity under the *Ryan* doctrine because it had been found negligent, and there can be no indemnification of a negligent shipowner. For its second assignment of error, Brix asserts that in granting the motion for judgment *n.o.v.*, the trial court erred in failing to address separately the question of Brix's entitlement to indemnity for the maintenance and cure benefits, because Cascade failed to plead Brix's comparative negligence as an affirmative defense to Brix's cross-claim for indemnification of maintenance and cure payments and chose to rely on its cross-claim instead. In the light of our holding that Brix is not entitled to indemnity at all under *Ryan*, and of the fact that that is the only theory under which indemnity is sought, we need not decide whether the trial court was correct in considering Brix's negligence as a bar to indemnity for maintenance and cure.

■■ For its third assignment of error, Brix asserts that in view of the trial court's ruling granting Cascade's motion for judgment *n.o.v.* with respect to Brix's claim for indemnity, the court erred in denying Brix's motion to amend its pleadings after trial to incorporate a separate claim for contribution to its liability for maintenance and cure benefits. We review the trial court's ruling for an abuse of discretion. *Cutsforth v. Kinzua Corp.*, 267 Or 423, 431, 517 P2d 640 (1973). Brix contends that it should have been permitted to amend its pleadings after the granting of the judgment *n.o.v.* because it could not reasonably have known before then of the need to assert a separate claim for contribution for maintenance and cure benefits. Brix concedes that its decision not to assert earlier a separate claim for contribution to maintenance and cure benefits was tactical, for a claim for contribution to maintenance and cure could have been raised in the alternative, without compromising Brix's claim for indemnity. We conclude that the trial court did not abuse its discretion in failing to allow the post-judgment *n.o.v.* amendment of the pleadings.

Affirmed.