Wilbert WILLIAMS, Personal Represent-
ative of the Estate of Ballard
Williams, Deceased, Plaintiff–Appellant,

v.

CENTRAL GULF LINES,
Defendant–Appellee.

No. 88–3274.

United States Court of Appeals,
Fifth Circuit.

June 12, 1989.

Walter Z. Steinman, Philadelphia, Pa. and A. Scott Tillery, Tillery & Tillery, Chalmette, La., for plaintiff-appellant.

Thomas J. Schoenbaum, Grady S. Hurley, and J. Daniel Rayburn, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellee.

Before THORNBERRY, GEE and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

The issue in this case is whether the exclusivity provision contained in the Suits

in Admiralty Act, 46 U.S.C.App. §§ 741–745, operates under the present circumstances to bar the plaintiff-appellant's suit against a private maritime employer. The district court held that the plaintiff's sole remedy was against the United States and dismissed the present suit because the only named defendant was a private maritime employer. Because we find that a cause of action could not have been stated against the United States within the meaning of the Suits in Admiralty Act, we now vacate the judgment and remand for further proceedings.

## I. BACKGROUND

In March 1984, Ballard Williams ("Ballard"), a seaman employed by appellee Central Gulf Lines ("Central Gulf") aboard its vessel, the S/S Bay, became ill with flu-like symptoms. Central Gulf placed him ashore at the Subic Bay Naval Hospital and later transferred him to the Clark Air Force Base Hospital where, on June 4, 1984, Ballard died. The initial autopsy report listed multiple glioblastomatic brain tumors as the cause of death. Subsequent amendments to the autopsy report suggest that the brain lesions may have resulted from Acquired Immune Deficiency Syndrome.

Individually and as representative of Ballard's estate, Wilbert Williams ("appellant") brought suit under general maritime law and the Jones Act, 46 U.S.C.App. § 688, against Central Gulf alleging its negligence in (1) failing to properly diagnose Ballard's condition, (2) failing to provide adequate medical service and treatment, and (3) failing to notify Ballard's family of his illness in a timely manner so as to provide them with an opportunity to seek alternative medical services.

During discovery it was revealed that, at the time of Ballard's death, the S/S Bay was under a time charter to the United States for use by the Military Sealift Command, an agency of the Department of the Navy. Central Gulf moved for summary judgment or, alternatively, to dismiss on

the grounds that, pursuant to the Suits in Admiralty Act's exclusivity provision, the plaintiff's sole remedy was a claim against the United States. The district court agreed with Central Gulf's interpretation of the Suits in Admiralty Act and, because the United States had not been named as a party-defendant, dismissed the suit. The appellant since filed a timely notice of appeal.

## II.

To support its position that Ballard's only claim relating to the alleged negligence lies against the United States, Central Gulf relies on the Suit in Admiralty Act's exclusivity provision which provides in part:

> Suits [against the United States] as authorized by this chapter may be brought only within two years after the cause of action arises: *Provided,* That where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States....

46 U.S.C.App. § 745. We find the statutory language providing that the exclusivity provision will only be triggered "where a remedy is *provided by* this chapter"[1] central to resolving the present dispute. The language is potentially misleading in two respects. First, as we have noted before, the Suits in Admiralty Act "does not itself *provide* a cause of action against the United States. Instead, it only acts as a waiver of the sovereign immunity of the United States in admiralty cases. Thus, the act merely provides a jurisdictional hook upon which to hang a traditional admiralty claim." *Trautman v. Buck Steber, Inc.,* 693 F.2d 440, 444 (5th Cir.1982) (citation omitted) (emphasis added). Second, Chapter 22 of Title 46, the Public Vessels Act, although not a part of "this chapter" as that term is used in section 745, specifically incorporates the provisions of Chapter 20, including the exclusivity provision, to the

---

1. "This chapter" as used in section 745 refers to chapter 20 of Title 46, the Suits in Admiralty Act.

extent not inconsistent with its own provisions. *See* 46 U.S.C.App. § 782. Like the Suits in Admiralty Act, the Public Vessels Act is a jurisdictional statute waiving the United States' immunity to suit under specified conditions. *Trautman,* 693 F.2d at 444 n. 2.

Central Gulf argues on appeal that, because the Public Vessels Act or alternatively the Suits in Admiralty Act provides a remedy against the United States, section 745 operates to bar the appellant's claim. After a careful examination of statutory language, case law, legislative history, and the historical milieu surrounding the enactment of the Suits in Admiralty Act and Public Vessels Act, we find that neither Act provides a remedy under the specific facts of this case and that the exclusivity provision, therefore, does not bar suit against Central Gulf.

### III. THE PUBLIC VESSELS ACT

■ We may easily dispose of Central Gulf's contention that the Public Vessels Act, 46 U.S.C.App. 781 *et seq.,* provides Ballard with a remedy against the United States. The Act waives the United States' immunity in suits "for damages caused by a public vessel of the United States." *Id.* While "public vessel" is not defined in the Act, existing case law and the charter agreement satisfy us that the S/S Bay is not a public vessel.

The S/S Bay is privately owned by Central Gulf and, at the time of Ballard's death, was time chartered to the United States. Pursuant to the agreement between the United States and Central Gulf, Central Gulf agreed to transport "any lawful cargo" at times and to ports of departure and call as designated by the United States. The charter expressly provides:

ARTICLE 22. THE MASTER, OFFICERS AND CREW

(a) The Master, Officers and crew of this Vessel shall be appointed or hired by the Owner and shall be deemed to be the servants and agents of the Owner.... The Master of Vessel, shall be under the direction of the Charterer as regards the employment of the Vessel, *but shall not be under Charterer's orders as regards navigation, care and custody of the Vessel and care of cargo.*

ARTICLE 31. CHARTER NOT A DEMISE

Nothing herein contained shall be construed as creating a demise of the Vessel to the Charterer, the Owner [Central Gulf] under this Charter retaining complete and exclusive possession and control of the vessel and its navigation.

(emphasis added).

In *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976), while reflecting on the seminal case *Calmar S.S. Corp. v. United States,* 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140 (1953), the Supreme Court touched on the question of whether a privately owned vessel whose destinations and cargoes were controlled by the United States as charterer but whose possession and operation remained with the private owner/operator constituted a "public vessel." Referring to the vessel in *Calmar,* the Supreme Court remarked,

In that case [*Calmar* ] the private owner of a steamship under charter to the United States brought suit for additional charter hire for the loss of its vessel, which was bombed by enemy airplanes while carrying military supplies and equipment. *The vessel was clearly not a 'public vessel' under the Public Vessels Act, because it was privately owned and operated.*

*United Continental,* 96 S.Ct. at 1325 (emphasis added). In view of Articles 22(a) and 31, *supra,* of the charter agreement between Central Gulf and the United States pursuant to which the United States hired a privately owned vessel but did not engage in its operations, we consider *United Continental* compelling authority for holding that the S/S Bay was not a public vessel within the meaning of the Public Vessels Act. *Cf. Blanco v. United States,* 775 F.2d 53, 59 (2d Cir.1985) (holding privately owned vessel under bareboat or demise charter to the United States and used solely in public service to be a "public vessel" under the Act); *Marine Coatings*

*of Alabama, Inc. v. United States,* 674 F.Supp. 819, 822 (S.D.Ala.1987) (naval support vessels, owned by the United States, are public vessels); *Santos v. RCA Service Co.,* 603 F.Supp. 943, 946 (E.D.La.1985) (vessel owned by the United States, operated by private contractor, and engaging in military functions is a public vessel); *Bradey v. United States,* 151 F.2d 742, 743 (2d Cir.) *cert. denied,* 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483 (1946) (vessel owned by the United States carrying coal owned by the Army is a public vessel).

Since, under the Public Vessels Act, a prerequisite to the government's waiver of immunity is the involvement of a public vessel, Central Gulf's attempt to invoke section 745's exclusivity provision through the Public Vessels Act must fail.

## IV. THE SUITS IN ADMIRALTY ACT

■ The exclusivity provision may bar the appellant's suit against Central Gulf "where a remedy [against the United States] is provided by [the Suits in Admiralty Act]." 46 U.S.C.App. § 745. As mentioned above, this court recognized that the provisions of the Suits in Admiralty Act do not themselves *provide* a remedy. Rather, the Act merely acts to waive the United States' immunity so as to furnish a "jurisdictional hook on which to hang a traditional admiralty claim." *Trautman,* 693 F.2d at 444. In light of *Trautman,* we view the issue of whether a remedy against the United States *is provided* by the Suits in Admiralty Act as entailing a two part inquiry. First, we must ask whether the United States has consented to suit given the facts at hand. This is the "jurisdictional hook" inquiry and involves applying the Act's statutory language to the present circumstances. If a jurisdictional hook is found to exist, we must then ask whether the party attempting to invoke the exclusivity provision as a defense to suit has shown that "a traditional admiralty claim" could have been stated against the United States. Only by satisfying this two part test can it be concluded that "a remedy is provided by [the Suits in Admiralty Act]" so as to justify barring plaintiffs from bringing suit

against private entities such as Central Gulf.

### A. The "Jurisdictional Hook" Inquiry

As discussed, Central Gulf owned the S/S Bay, the vessel on which Ballard became ill. Pursuant to a written agreement, Central Gulf time chartered the vessel to the United States but retained possession and control of the vessel's day-to-day operations. *See supra* Articles 31 and 22(a) of the charter agreement. The United States controlled the cargoes carried and ports of call and destination to which the vessel sailed.

Based on these relationships, Central Gulf argues that the Suits in Admiralty Act functions to waive the United States' sovereign immunity thus establishing a jurisdictional hook. We agree. The relevant sections of the Suits in Admiralty Act provide:

**§ 741 Exemption of United States vessels and cargoes from arrest and seizure**

No vessel owned by the United States ..., or in the possession of the United States ... or *operated by or for* the United States ..., and no cargo owned or possessed by the United States ... shall, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process....

(Emphasis added). The libel in personam provision mentioned in section 741 states:

**§ 742 Libel in personam**

In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person were involved, a proceeding in admiralty could be maintained, *any appropriate nonjury proceeding in personam may be brought against the United States....*

Central Gulf argues that by reason of the time charter arrangement the S/S Bay was *operated for* the United States within the meaning of section 741 and that the United States is subject to admiralty proceedings under section 742 as if "such vessel," i.e. one operated for the United States, were privately owned or operated. This argument highlights what we consider

a difficult, if not impossible, task of reconciling the applicability of section 742 to privately owned vessels with the "operated for" language which, in order to give the phrase meaning distinct from the "owned by" category, we infer includes the involvement of privately owned vessels. *See also Trautman* at 444 (likening the phrase "operated by" United States to a demise or bareboat charter and "operated for" the United States to a time charter arrangement). However, because we are able to dispose of the current dispute without relying on the "operated for" language or § 741, we need not presently solve the conundrum counsel present.

In 1960 Congress amended section 742 by adding the clause "if a private person or property were involved" to the first sentence of the section. Act of Sept. 13, 1960, Pub.L. No. 86–770, § 3, 74 Stat. 912 (1960). *See De Bardeleben Marine Corp v. United States*, 451 F.2d 140 (5th Cir.1971) (discussing the legislative history of section 742 including the 1960 amendment). The first sentence of section 742 now states in relevant part:

> In cases where ... if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States....

We have concluded that this amendment was " 'intended to bring all admiralty claims against the United States within the ambit of the [Suits in Admiralty Act], whether or not involving government cargoes or vessel(s).' " *Trautman*, 693 F.2d at 445 (quoting *Kelly v. United States*, 531 F.2d 1144, 1149 (2d Cir.1976)); *See also id.* at 444 (1960 amendment did much to undercut the significance of determining whether a vessel is owned, in the possession of, operated by, or operated for the United States). *But see, United Continental*, 96 S.Ct. at 1329 (holding that "claims within the scope of the Public Vessels Act remain subject to its terms after the 1960 amendment to the Suits in Admiralty Act.").

In view of the 1960 amendment, if a proceeding in admiralty could be asserted against a private person in the Government's position, then the Suits in Admiralty Act will provide a jurisdictional hook on which to hang a claim against the Government. Had a private party time chartered the S/S Bay, we are persuaded that, based on notions of operational control, such person could be subject to suit for the negligence alleged herein. Thus, by operation of the 1960 amendment to the Suits in Admiralty Act, the Government, under the present circumstances, has consented to suit as if a private person were involved.

### B. The "Traditional Admiralty Claim" Inquiry

The Suits in Admiralty Act will not "provide a remedy" as envisioned by section 745's exclusivity provision unless, when the action arose, principles of maritime law would have allowed the appellant to state a claim against a private person in the same position as the Government, i.e. against a private time charterer. This Circuit's general rule is that a time charterer " 'who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise.' " *P & E Boat Rentals, Inc. v. Ennia General Insurance Co., Inc.*, 872 F.2d 642, 647 (5th Cir.1989) (quoting *Mallard v. Aluminum Co. of Canada, Inc.*, 634 F.2d 236, 242 n. 5 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed. 2d 85 (1981)). *See also* M.J. Norris, *The Law of Maritime Personal Injuries 3d*, § 130 (1987). The term "control" as used by this court in formulating this general rule refers to operational control of the vessel, not ultimate control of its destination or cargoes.

Article 22(a) of the present charter agreement patently states that "[t]he Master of the Vessel ... shall not be under the direction of the Charterer as regards navigation, care and custody of the Vessel and care of the cargo." We find that, by operation of this provision, the United States acquired no operational control over the vessel. Although the charter provides that the United States shall bear certain costs, responsibility for costs "in and of itself

does not transfer operational responsibility from the owner." *Mallard,* 634 F.2d at 242 n. 5. Indeed, "this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect." *Id.* The charter contains no clear language whereby the United States assumes responsibility for the vessel's operations or for personal injuries caused by negligence of the crew. We therefore hold that operational control did not shift from Central Gulf to the United States and that, given the specific facts at hand, the appellant would have been unable to state a claim against the United States as time charterer.

## V. CONCLUSION

Application of our two part inquiry indicates that the second prong, i.e. the existence of a traditional admiralty claim prong, has not been met. Because a jurisdictional hook alone does not suffice to "provide a remedy" under the Suits in Admiralty Act, section 745's exclusivity provision does not operate to bar suit against Central Gulf. We therefore VACATE the dismissal of the appellant's claims and REMAND for proceedings not inconsistent with this opinion.

GEE, Circuit Judge, concurring in part and, in part, dissenting:

I concur in parts I–IV(A) of the majority opinion. Under the facts of this case and established principles of maritime law, however, it seems to me patent that Ballard satisfied both the "jurisdictional hook" and traditional admiralty claim tests required for suit under the Suits in Admiralty Act. I therefore dissent from the judgment of the Court.

The Suits in Admiralty Act, 46 U.S.C. App. § 741 et seq., was amended in 1960 to eliminate uncertainty as to who was ultimately responsible for wrongful acts of maritime agents of the United States. The relevant portions of the act provide:

Section 741:

**Exemption of United States Vessels and Cargoes from arrest or seizure.**

No vessel owned by the United States ... or in the possession of the United States ... *or operated by or for the United States* ... shall ... be subject to arrest or seizure by judicial process ... (emphasis added).

Section 742:

**Libel in personam.**

In cases where if such vessel were privately owned or operated ... or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate non-jury proceeding in personam may be brought against the United States ...

Section 745:

**Causes of action for which suit may be brought ...**

Suit as authorized by this chapter may be brought only within two years after the cause of action arises ... where a remedy is provided by this chapter it shall hereafter be exclusive of any action by reason of the same subject matter against the agent or employee of the United States ... whose acts or Omissions gave rise to the claim ...

The majority notes that this Act applies to vessels "operated for" the United States as well as those "owned by" or "operated by" the United States. The majority also refers to our opinion in *Trautman v. Buck Steber, Inc.,* 693 F.2d 440 (5th Cir.1982) in which we held that:

... *something closer to a time charter when the Government directs the vessel's overall functions even though the owner may control the operation of the vessel's personnel and equipment rather than a single purpose contract entered into with an independent contractor would be required to make the vessel "operated for the United States."* *Id.* at 444, citing *J.W. Petersen Coal and Oil Co. v. United States,* 323 F.Supp. 1198, 1205–06 (N.D.Ill.1970) (emphasis added).

Nonetheless, the majority goes on to conclude that the Suits in Admiralty Act does not apply to time-charters in which the government directs the employment of the

vessel but the owner retains operational control over it.

In reaching this conclusion the majority observes that it is "able to dispose of the current dispute without relying on the 'operated for' language of § 741." The majority concedes that the first clause of § 742, i.e., "if *such* vessel were privately owned or operated", can only be understood by reference to § 741. The majority concludes, however, that the "jurisdictional hook" inquiry is satisfied under the third phrase in § 742, eliminating the need to address that inquiry under the first phrase as defined by § 741. To the extent that § 742 and § 741 are consulted solely to determine whether the jurisdictional hook inquiry is satisfied, this analysis is sound. I believe, however, that we must also address §§ 742 and 741 to determine whether the second prong of the majority's test, the traditional admiralty claim inquiry, has been satisfied.

In concluding that the second prong of the test has not been met the majority notes that under traditional maritime principles a time-charterer "who has no control over the vessel assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise." *P & E Boat Rental* at 647. The majority apparently believes that it is impossible to reconcile this principle with the "operated for" language of § 742. I have no such difficulty.

For good or ill, the Congress can do as it likes with traditional maritime principles in such matters as this, and there is nothing doubtful about the phrase "operated for." Nor have we held that a time charterer who has no control over a vessel is never liable for a crews' negligence. Rather, we have held that this rule applies absent a "showing that the parties to the charter intended otherwise." *Id.* In a case where the time charterer is the government, that showing is clearly evidenced by the "such vessels" language of § 742. The vessels referred to in this section include *all* vessels mentioned in § 741, including vessels "operated for" the United States, i.e., ves-

sels over which the government exercises no operational control. Because it seems clear to me that Gulf Central satisfied both the "jurisdictional hook" and "traditional admiralty claim" inquiries, I would hold the exclusivity provision of § 745 applicable to this case. As the majority does not,

I respectfully DISSENT.