**Clifton FAVORITE, Plaintiff–Appellant,**

v.

**MARINE PERSONNEL AND PROVISIONING, INC., Individually, and as Agent for Marine Transport Management Company, Inc., et al., Defendants–Appellees.**

**Clifton FAVORITE, Plaintiff–Appellant,**

v.

**MARINE PERSONNEL AND PROVISIONING, INC., et al., Defendants–Appellees.**

**Nos. 90–3833, 91–3170.**

United States Court of Appeals, Fifth Circuit.

March 12, 1992.

---

Marcus James Poulliard, Guy Edward Weigel, Seelig, Cossé, Frischhertz & Poulliard, New Orleans, La., for plaintiff-appellant.

Glenn Paul Orgeron, Michael A. McGlone, Lemle & Kelleher, New Orleans, La., for defendants-appellees.

Thomas L. Jones, Sr., Adm. Counsel, Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., Harry Rosenberg, U.S. Atty., New Orleans, La., for U.S.A.

Before REAVLEY, JOLLY, and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Clifton Favorite, a seaman aboard a privately owned vessel leased to the United States, sued his employer, who operated the vessel, for injuries suffered aboard the vessel. The questions we address are whether the two contracts between the United States and Favorite's employer, first, rendered the vessel a public vessel and, second, rendered Favorite's employer an agent of the United States. If so, Favorite's sole remedy is against the United States, and the two-year, instead of the three-year statute of limitations in the Jones Act, applies to bar Favorite's claim. Finally, if the two-year statute applies, the remaining question is whether there is any equitable reason to toll the statute for Favorite. Favorite appeals an unfavorable judgment. We affirm.

## I

The USNS SEALIFT CARIBBEAN is owned by Marine Vessel Leasing Corporation (Leasing) and bareboat chartered to the United States, via the Military Sealift Command (MSC). The MSC entered into a contract with Marine Personnel and Provisioning, Inc. (Personnel) and Marine Transport Management Company (Management) to provide the maintenance, operations and crew for the USNS SEALIFT CARIBBEAN. Personnel, Management, and Leasing are all subsidiaries of Marine Transport Lines, Inc. (MTL).[1]

In his complaint, Favorite alleges that during his employ by Management as a seaman aboard the USNS SEALIFT CARIBBEAN, on or about January 16, 1988, he was injured as a result of the negligence of Management and the unseaworthiness of the vessel. Favorite filed suit against Personnel, individually and as agent for Management, under the Jones Act, 46 U.S.C.App. § 688, and the general maritime law. Favorite later amended his complaint to add Leasing and the United States as defendants. He added as a basis for relief the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.* (PVA). The district court subsequently granted two summary judgments, dismissing Personnel, Management, and Leasing from the suit. The court found that Favorite's exclusive remedy, if any, lay against the United States under the PVA and the Suits in Admiralty Act (SAA), 46 U.S.C.App. §§ 741–52. Favorite appealed the court's dismissals of Personnel, Management, and Leasing. During the pendency of the appeal, the district court dismissed Favorite's suit against the United States as time barred under the PVA's two-year statute of limitations. *See* 46 U.S.C.App. §§ 745, 782. Favorite then appealed this dismissal, and this court consolidated his appeals.

The dispute in this appeal centers on the status of the USNS SEALIFT CARIBBEAN at the time of Favorite's alleged injury. Favorite argues that the Caribbean is not a

---

**1.** The operational contract was entered into by MTL on behalf of Personnel and Management. Management manages MTL vessels and Personnel supplies the crew. Hereinafter we refer to the contract as between the United States and MTL.

public vessel, while the MTL entities and the United States contend that it is.

## II

Favorite argues that (1) the USNS SEALIFT CARIBBEAN is not a public vessel, (2) even if it were a public vessel, the exclusivity clause of the PVA and SAA does not apply, and (3) if the exclusivity provision does apply, the court should equitably toll the two-year statute of limitations in the provision.

■ Our review of the district court's ruling on summary judgment is plenary; we apply the same standards as those governing the district court's determination. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 177–78 (5th Cir. 1990). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the dismissal of the United States for lack of subject matter jurisdiction, a ruling not involving a choice between factual positions, "our review is limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

### A

#### (1)

The Public Vessels Act (PVA), 46 U.S.C.App. § 781 *et seq.*, waives the United States' sovereign immunity in suits "for damages caused by a public vessel of the United States." The PVA does not, however, define the term "public vessel." Section 2 of the PVA incorporates by reference the SAA. The SAA "provides that a libel *in personam* may be brought against the United States in cases where an admiralty proceeding could be maintained were the vessel privately owned or operated."

*Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911, 912 (5th Cir.1974); 46 U.S.C.App. § 742. Important for this appeal, § 5 of the SAA provides, *inter alia:*

Suits [against the United States] as authorized by this chapter may be brought only within two years after the cause of action arises: *Provided,* That where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim.

46 U.S.C.App. § 745. Favorite's appeal involves both the two-year statute of limitations and the exclusivity provision of this section.

#### (2)

■ Favorite argues that the exclusivity provision of § 5 of the SAA does not apply in this case because the USNS SEALIFT CARIBBEAN is not a public vessel. Favorite contends that the government's only proof that the vessel is a public vessel is a contract provision designating the USNS SEALIFT CARIBBEAN a public vessel. According to Favorite, the court should not give effect to this statement because the crew was not made privy to the contract and would not have understood the significance of the designation even if they knew.

■ We agree with Favorite that MTL's and the United States' contractual designation of the USNS SEALIFT CARIBBEAN as a public vessel is not determinative of whether it is a public vessel within the meaning of the PVA. The district court's determination that the ship was a public vessel, however, is correct according to case law and the facts.

Privately owned vessels under exclusive bareboat charter to the government may be public vessels. In *Santos v. RCA Service Co.*, 603 F.Supp. 943, 946 (E.D.La.1985), the court stated that "[a]lthough there are few decisions interpreting the meaning of public vessel in the Public Vessels Act, those decisions suggest that a vessel with a military function are public vessels [sic] within

the meaning of that Act." "[T]he term 'public vessel' in the PVA [includes] a vessel under bareboat charter to the United States and used solely in public service." *Blanco v. United States*, 775 F.2d 53, 59 (2d Cir.1985). *See also Cruz v. Marine Transport Lines, Inc.*, 634 F.Supp. 107, 109 (D.N.J.), *aff'd*, 806 F.2d 252 (3d Cir. 1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987).

Favorite, however, relies on this court's opinion in *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990). In *Williams*, this court held that the exclusivity provision did not bar a suit against a private employer by a seaman injured aboard a vessel time chartered to the United States. The court found that under the time charter the vessel was not a public vessel because the United States was not responsible for the vessel's operations or for personal injuries caused by the crew's negligence. *Id.* at 1060–61. The United States only controlled the vessel's destination and cargo and did not assume operational control. *Id.* at 1060.

Favorite argues here that, similarly, the government provided only sailing orders and that MTL furnished the personnel and operated the vessel. Thus, when the government entered into the operational contract with MTL the government assumed the role of a time charterer. Favorite further contends that the only reason that MTL wrote the contract provision that designates the vessel as a public vessel, was to shift the liability to the United States.

Favorite's arguments are erroneous both in law and fact. Here there were two contracts: First, the contract between Leasing, the owner of the vessel, and the United States and, second, the contract between MTL, on behalf of Management and Personnel, and the United States. There is simply no basis to question that the contract between Leasing and the United States was a bareboat charter. This fact is not disputed by the parties. As the court in *Blanco* held, because the government was a bareboat charterer, the vessel was a

public vessel and, therefore, the PVA applied. The Second Circuit's holding is consistent with admiralty's traditional view of the bareboat charterer. Maritime law recognizes the bareboat charterer as an owner *pro hac vice*, who is responsible for all *in personam* liabilities arising out of the vessel's operation. *Blanco*, 775 F.2d at 58. A vessel under bareboat charter to the United States is a public vessel because the United States exercises "possession, command, and control" over the vessel. Thus the more substantial question raised by this case is whether the character of the bareboat charter was changed by the second contract. We think not.

There is no basis upon which to hold that the United States released the control and possession it had attained by the bareboat charter. Instead, the record indicates that the government, as the bareboat charterer, entered into the second contract with MTL only to provide a crew and to operate the vessel on the government's behalf. In *Blanco*, the Second Circuit explained this relationship:

> [The Sealift Atlantic] is one of nine Sealift-class tankers, all of which are privately owned but were built for bareboat charter to the United States.... The Sealift Atlantic operates as part of the Navy's Military Sealift Command under schedules fixed by the Command, transporting Department of Defense petroleum products in furtherance of the nation's defense. Personnel are hired and the details of operations are conducted by MTL under the Navy's orders.

775 F.2d at 55–56. In contrast, this court noted in *Williams* that the owner " 'retain[ed] complete and exclusive control and possession of the vessel and its navigation.' " *Williams*, 874 F.2d at 1060 (quoting contract involved). The contract clearly shows that MTL does not retain exclusive control and possession of the USNS SEALIFT CARIBBEAN.

Indeed, the contract between the government and MTL reinforces our conclusion that the United States did not change the nature of its status from a bareboat char-

terer to a time charterer. The contract provides, *inter alia:*

1) § C–1.1 SCOPE OF WORK

The Contractor [MTL] shall provide personnel, operational and technical support ashore and afloat, equipment, tools, provisions and supplies, spare parts, consumables, etc. to operate and maintain tankers *for the Commander, Military Sealift Command (COMSC).* Nine tankers are operated for the purpose of moving Department of Defense refined petroleum products worldwide.

2) § C–1.2 OPERATIONAL CONTROL

*Operational control will be exercised by the MSC.* The Government will provide sailing orders, special reporting instructions and will obtain requisite clearances for these tankers to operate in foreign territorial waters and call at foreign ports.

4) § C–1.5.1.8 CREW STANDARDS OF APPEARANCE

The Contractor shall ensure that the appearance, dress and behavior of the Officers and crew while in port are a credit to the U.S. Naval status of these ships.

5) § C–3.1.1 SHIPS AND INSTALLED EQUIPMENT

The Government will furnish ships and installed equipment described in Technical Exhibit 5A [includes SEALIFT CARIBBEAN].

6) § C–5.0 OPERATE SHIP

The Contractor shall operate the ships to support all MSC requirements.

7) TECHNICAL EXHIBIT 6 SEALIFT CLASS TANKERS MAINTENANCE AND UPKEEP PROGRAM

§ 1 General: The Sealift Class Tankers are a part of the Military Sealift Command Fleet, and will serve to transport military petroleum [sic] products to facilities throughout the world.

8) TECHNICAL EXHIBIT 11 PAINTING AND TANK COATING

§ 11.2.4 HULL IDENTIFICATION MARKINGS: Each ship shall have painted on each side of the bow the caption

"U S NAVAL SHIP" directly above the ship's name.... in letters 10″ high and 1½″ in nominal thickness.... On the stern of each ship will appear a similar legend.

9) § H–9 INSURANCE

[This provision requires the contractor to procure Protection and Indemnity (P & I) and Hull insurance, naming the government and the contractor as coinsureds. Under this section, the government also agrees to be responsible for any liability in excess of the required coverage. In addition, this section states that *"[i]n view of the Government's status as demise charterer of the ships, lawsuits may be filed and liabilities may be assessed against the Government arising out of operation of the ships."*]

10) § H–12 STATUS OF VESSELS

These ships to be operated under this contract are U.S. Naval vessels (USNS) and as such are public vessels of the United States.

11) § I–8(c)(1) TITLE IN GOVERNMENT PROPERTY

The Government shall retain title to all Government-furnished property. [See # 5 above].

(Emphasis added.) Moreover, the contract allows the government to place the ships on reduced operational status (§ F–6); requires the contractor to investigate and remove employees with whom the government is dissatisfied (§ H–4); allows the government to inspect the ship (§ C–1.8); and requires the contractor to submit reports and log entries (§ C–5.1.1.4).

These provisions all reinforce the government's claim that it continued to be the bareboat charterer of the vessel even after it contracted with MTL for the operation of the vessel.[2] *See Federal Barge Lines, Inc. v. SCNO Barge Lines, Inc.,* 711 F.2d 110, 112 (8th Cir.1983) (holding that neither vessel owner's provision of a crew or insurance coverage defeated intent of demise charter to transfer "possession, command and navigation" of vessel to charterer);

---

**2.** MTL and the United States also submitted an uncontradicted affidavit from the Military Sealift Command's Deputy Counsel, attesting to the USNS SEALIFT CARIBBEAN's status as a public vessel, operated by MTL for the government's benefit.

*Cruz,* 634 F.Supp. at 109 (finding that the USNS SEALIFT PACIFIC was a public vessel). We thus conclude that the USNS SEALIFT CARIBBEAN is a public vessel.

### (3)

■ Next we must determine whether, under the SAA, MTL was an agent of the United States, because only if it is an agent of the United States is it protected by the exclusivity clause. "[W]here a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the *agent or employee* of the United States...." 46 U.S.C.App. § 745 (emphasis added). "The caselaw clearly establishes that if MTL was indeed an agent of the United States, plaintiff's exclusive remedy ... lies against the United States." *Cruz,* 634 F.Supp. at 110. We agree with the Third Circuit that as the contract operator of a bareboat charter of the United States, MTL is an agent of the United States. *See Petition of United States,* 367 F.2d 505, 511 (3d Cir.1966), *cert. denied,* 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967).

"As a matter of legal definition, 'agent' of the United States is an appropriate characterization of such a contract operator of a public vessel" as MTL. *Petition,* 367 F.2d at 509. MTL was acting as a fiduciary of the government, "undertaking to act on the United States' behalf ... and subject to control and direction of the United States." *Cruz,* 634 F.Supp. at 110; *Petition,* 367 F.2d at 509. MTL was acting subject, through the MSC, to the government's overall control and direction. The contract provided that the MSC exercised operational control, § C–1.1, and that MTL operated the USNS SEALIFT CARIBBEAN "to support all MSC requirements." Contract, § C–5.0. The vessel was "operated for the purpose of moving Department of Defense refined petroleum products worldwide." Contract, § 1.1. Because "the general statement of an agency concept ... include[s] any instrumentality through and by which the public vessels are operated," MTL was an agent of the United States and covered by § 5 of the SAA. *Petition,* 367 F.2d at 510.

### B

■ Favorite nevertheless argues that the exclusivity clause should not preclude his claim because MTL and the government have not demonstrated that a traditional admiralty claim exists against the United States, i.e., that Favorite would have an admiralty claim against a private person or property in the government's place. Citing *Williams,* Favorite argues that the United States would not be liable if it were a private employer because (1) it does not exert "control" over the vessel, as *Williams* requires and (2) as a time charterer, it did not agree to be liable for negligence and unseaworthiness. *See also Padro v. Vessel Charters, Inc.,* 731 F.Supp. 145, 148–49 (S.D.N.Y.1990); *Stubblefield v. Vickers Towing Co.,* 674 F.Supp. 566, 569–71 (N.D.Miss.1987), *withdrawn,* 719 F.Supp. 1337 (N.D.Miss.1989). As we have discussed above, the United States did exercise control over the USNS SEALIFT CARIBBEAN and the United States was a bareboat charterer, not a time charterer. As the bareboat charterer, the United States did not need to assume liability; the liability attached with the bareboat charter. *See Blanco,* 775 F.2d at 57–58. Notwithstanding, the contract recognized the United States' liability. "In view of the Government's status as demise charterer of the ships, lawsuits may be filed and liabilities may be assessed against the Government arising out of the operation of the ships." Contract, § H–9(b). Thus, Favorite's arguments that no traditional admiralty claim existed against the United States fail in view of our holding that the USNS SEALIFT CARIBBEAN was not a time charter, but a bareboat charter and a public vessel under the control of the United States.

### C

■ Favorite next argues that the court equitably should toll the SAA's two-year statute of limitations. He argues that he waited to bring suit only because he believed he could sue MTL, his private em-

ployer, under the three-year statute of limitations in the Jones Act. In general, a court may toll the SAA's limitations period if doing so would not defeat the statute's legislative purpose, which is to encourage parties with claims against the government to present their claims promptly and diligently, or if injustice to the plaintiff would result. *McCormick v. United States,* 680 F.2d 345, 351 (5th Cir.1982). Favorite did not file his suit against MTL, or anyone else, until after the two-year statute of limitations had run. Therefore, we would be ignoring the statutory purpose of encouraging prompt presentation of claims if we tolled the statute of limitations. Favorite has not shown that tolling in this case would not defeat the statute's purpose.

Nor has Favorite presented evidence of an injustice of the type courts have accepted as warranting application of the equitable tolling doctrine. *See Wilson v. Zapata Off–Shore Co.,* 939 F.2d 260, 267 (5th Cir.1991) (if claimant's filing is timely but defective or if claimant is induced or tricked by adversary's misconduct into allowing the filing deadline to pass). The fact that Favorite's employer paid his maintenance and cure (so as to suggest its liability) is not at all the sort of employer conduct that justifies an extension of the limitations period. This payment of a benefit, deserved or undeserved, is not the sort of culpable conduct required to mislead a seaman into letting the filing period lapse, which justifies tolling. *See Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). A 1988 letter from Favorite's attorney identifies the vessel as the "U.S.N.S. SEALIFT CARIBBEAN." Apparently, pursuant to the contract, "U S NAVAL SHIP" was painted on the vessel. Favorite knew, or should have known through the exercise of due diligence over a two-year period of time, that the government controlled the vessel. The Supreme Court has "generally been much less forgiving in receiving late filings where claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Veterans Admin.,* — U.S. —, —, 111 S.Ct. 453, 458, 112

L.Ed.2d 435, 444 (1990). We thus reject Favorite's argument for tolling.

### D

■ Favorite also suggests that Congress intended the 1950 amendment to the SAA to provide relief to seamen whose suits were dismissed because they were brought against the wrong party. The amendment, however, only provided a one-year window in which suits brought against the wrong party could be refiled without being time barred. Sen.Rep. No. 1782, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.C.C.A.N., 4209, 4210. The amendment's legislative history indicates that Congress passed the amendment to alleviate legal confusion created at the time by some Supreme Court opinions. Favorite has not demonstrated that this confusion has persisted. Indeed, this court has held that the intent of the amendment was " 'not to keep alive the liability of a private person, firm or corporation having charge of a Government ship.' " *Doyle,* 504 F.2d at 913 (quoting *Smith v. United States,* 346 F.2d 449, 453–54 (4th Cir.), *cert. denied,* 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965)). We thus reject Favorite's argument that the 1950 amendments to the SAA provide him any relief.

### III

For the reasons we have set forth in this opinion, the judgment of the district court is

AFFIRMED.