Gerald E. ALEXANDER, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 93–17320.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 1995.

Decided Aug. 7, 1995.

Thomas J. Boyle, Sullivan, Johnson & Boyle, San Francisco, CA, for plaintiff-appellant.

Jeanne M. Franken, U.S. Dept. of Justice, San Francisco, CA, for defendant-appellee.

Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## I. OVERVIEW

Gerald E. Alexander appeals the district court's summary judgment in favor of the United States in his personal injury action. Alexander was injured aboard the S.S. Santa Adela which was chartered to the United States by his private employer. The district court held the government was not responsible for Alexander's injuries because it was not in operational control of the ship and committed no acts or omissions of independent negligence. We have jurisdiction over Alexander's timely appeal, 28 U.S.C. § 1291, and we affirm.

## II. FACTS

Alexander was chief mate aboard the S.S. Santa Adela. He was employed by the owner of the ship, Vessel Charters, Inc. (VCI), which is now bankrupt. The ship was chartered by VCI to the United States Navy. According to the express language of the charter, VCI hired and was responsible for the crew. The charter expressly proclaimed it was not a demise charter. A "demise" or "bareboat charter" grants total control of the

vessel to the charterer for the charter period. *See Blacks Law Dictionary* 136 & 388 (5th Ed.1979). Under a "time charter," however, the owner continues to operate the vessel and the crew remain employees of the owner. *Id.* at 1330.

At the time Alexander was injured, the ship was moored in South Korea. Government officials were supervising the unloading of the ship's cargo of explosives. While this was going on, the ship's first assistant engineer was attempting to fix a lifeboat winch. Alexander and the captain of the vessel were standing near the lifeboat, conferring on an unrelated matter, when the winch handle flew off and struck Alexander in the head. He suffered injuries and brought suit against the United States. After discovery, the district court granted the government's motion for summary judgment, and this appeal followed.

### III. DISCUSSION

■ Pursuant to the waiver of sovereign immunity in the Suits in Admiralty Act (SIAA), 46 U.S.C. § 742, Alexander can maintain his personal injury action against the United States if his action could be maintained against a private party under traditional admiralty law. *See Sutton v. Earles*, 26 F.3d 903, 911–12 (9th Cir.1994); *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990).

■ The charter document in this case creates a time charter. Under traditional admiralty principles an injured seaman cannot sue a time charterer unless the seaman can show either the time charterer had enough control of the vessel to render it the owner *pro hac vice*, *Williams*, 874 F.2d at 1062, or the time charterer was actively negligent. *See* Thomas J. Shoenbaum, *Admiralty and Maritime Law* § 10–12 at 404 (1987) ("In a non-demise charter, the charterer is normally not liable for injuries to crew members for unseaworthiness or operating negligence. Where, however, the charterer is actively negligent or undertakes operating functions on the vessel, he will be liable for injuries resulting from [his] own acts.") (hereafter "Shoenbaum").

#### 1. Operational Control

■ The charter is unambiguous—VCI retained operational control of the Santa Adela under the charter. Alexander's citation to *Favorite v. Marine Personnel and Provisioning, Inc.*, 955 F.2d 382 (5th Cir.1992), is inapposite. In *Favorite*, the court found a charter that included the statement "Operational control will be exercised by the [charterer-government]" to be a bareboat charter. *Id.* at 387. There is no such language in the instant charter.

Alexander could still prevail if he could show that despite the language of the charter, the government actually exerted operational control over the vessel. In support of this theory, Alexander relies on his own conclusory declaration that the Santa Adela operated more like the ship in *Favorite* than the ship in *Williams*, and he was a crew member on both ships. This testimony, however, is irrelevant because the *Favorite* court grounded its finding of a bareboat charter in the language of the charter rather than the operation of the vessel. *Favorite*, 955 F.2d at 387.

■ Alexander also relies on the deposition testimony of David Sears. Mr. Sears testified that the government exercised operational control over the vessel to such an extent that the charter was the equivalent of a demise or bareboat charter. The district court rejected this testimony on the ground that Mr. Sears was not a qualified expert. The court stated: "Mr. Sears's qualifications are not at all on point with the issues in this case, namely interpretations of charters and operational control of chartered vessels."

We have reviewed Mr. Sears's deposition and agree with the district court's assessment of his qualifications. The district court's exclusion of Mr. Sears's testimony was not "manifestly erroneous." *See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental Inc.*, 944 F.2d 597, 601 (9th Cir.1991).

■ Alexander also relies on the fact that the government directed the movement and cargo operations of the Santa Adela. A

time-charterer, however, always directs the movements and cargo operations of the ship. *See* Shoenbaum § 10–1 at 382 (time-charterer directs the movements); *Turner v. Japan Lines, Ltd.,* 651 F.2d 1300, 1306 (9th Cir. 1981) (time-charterer controls cargo operations), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982). The time-charterer's exercise of these rights is not inconsistent with the vessel owner's control of the vessel and its crew. Shoenbaum § 10–1 at 382.

■ Because the government did not exercise operational control over the Santa Adela, a negligence action will not lie against the United States under traditional admiralty principles. In reaching this conclusion, we agree with the Fifth Circuit's analysis in *Williams,* notwithstanding Judge Gee's vigorous dissent in that case.

In his dissent in *Williams,* Judge Gee argued that the term "such vessel" in 46 U.S.C. § 742[1] means those vessels referred to in 46 U.S.C.App. § 741.[2] Section 741 includes vessels "operated for" the United States; therefore, according to Judge Gee, a seaman may bring suit against the United States simply by showing that he was injured on a ship that was operated for the United States. *Williams,* 874 F.2d at 1064 (Gee, J., dissenting); *accord Nakano v. United States,* 1988 A.M.C. 2220, 2221 (S.D.Cal.1988) (decided under pre-*Williams* caselaw).

Although Judge Gee's view has some textual appeal, we reject it. His view requires the word "such" in section 742 to override traditional admiralty law, an illogical result which no authority supports and which we cannot conceive of Congress intending absent more explicit language in the statute or some persuasive legislative history. There is neither.

### 2. Independent Government Negligence

■ Alexander contends that in any event, the government was negligent by its own independent act of negligently managing the unloading of the cargo from the Santa Adela. He asserts he had to be where he was when the winch handle hit him, because he had to be there to talk to the captain to deal with the government's unloading of the vessel. Moreover, he argues, another crewmember would have been available to help the first assistant engineer with the repair to the winch if all available crewmembers had not been engaged in unloading the cargo, for which the government was responsible.

Even if we were to assume that Alexander raised a triable issue of fact as to whether the government was negligent in managing the unloading of the vessel, he failed to demonstrate how that alleged negligence was the proximate cause of his head injury. *See generally Prosser and Keeton on Torts* at 272–280 (5th Ed.1984) (defining proximate cause). Alexander was injured because the winch handle came off while it was being repaired, an act which had nothing to do with unloading the vessel.

■ As an additional ground for the government's independent negligence, Alexander argues the government was negligent in "selecting a contractor without financial responsibility." Alexander cites only one case for the existence of this alleged tort, *Becker v. Interstate Properties,* 569 F.2d 1203, 1211 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), and *Becker* was later abrogated. *Robinson v. Jiffy Executive Limousine Co.,* 4 F.3d 237, 242–43 (3d Cir. 1993).

---

**1.** Section 742 provides in pertinent part:

> In cases where if *such vessel* were privately owned or operated ... a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States or against any corporation *mentioned in section 741 of this title.*
>
> 46 U.S.C. § 742 (emphasis added).

**2.** Section 741 provides in pertinent part:

> No vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in possession of the United States or of such corporation *or operated by or for the United States* or such corporation ... shall after March 9, 1920, *in view of the provision herein made for a libel in personam,* be subject to arrest or seizure by judicial process in the United States or its possessions.
>
> 46 U.S.C.App. § 741 (emphasis added).

Alexander cannot prevail on his "financially responsible contractor" theory because he cannot show the United States owed him a duty to hire a financially responsible contractor—even if he could show such a duty was breached.

## IV. CONCLUSION

The government did not have operational control over the Santa Adela, nor did it commit any independent act of negligence which was the proximate cause of Alexander's injury. The district court did not err in granting summary judgment in favor of the government.

AFFIRMED.