**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| SYNDICATES 1183, 1036, AND 2007, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, subscribing to Charterer's Legal Liability Policy Number GU300630J, | No. 23-35429 |
| | D.C. No. 3:21-CV-00252-JMK |
| Plaintiffs-Appellees, | |
| v. | MEMORANDUM[*] |
| COOK INLET SPILL PREVENTION AND RESPONSE, INC., CISPRI SERVICES, LLC, | |
| Defendants-Appellees, | |
| v. | |
| GEMINI INSURANCE COMPANY, | |
| Defendant-Appellant, | |
| and | |
| FURIE OPERATING ALASKA, LLC, et al., | |
| Defendants. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the District of Alaska
Joshua M. Kindred, District Judge, Presiding

Argued and Submitted December 2, 2024
San Francisco, California

Before: COLLINS, VANDYKE, and MENDOZA, Circuit Judges.
Concurrence by Judge COLLINS.

Gemini Insurance Company ("Gemini") appeals from summary judgment and declaratory judgment stating that its insurance policy, issued to Furie Operating Alaska, LLC ("Furie"), covers Furie's liability under an arbitration award to CISPRI Services, LLC ( "CISPRI") for negligence, and that another policy from Syndicates 1183, 1036, and 2007, Certain Underwriters at Lloyd's, London ("Underwriters") does not.  We have jurisdiction under 28 U.S.C. § 1291, and we review a district court's grant of summary judgment de novo.  *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (per curiam).

Gemini argues that Underwriters' policy no. B702 GU300630j (the "Underwriters Policy") covers Furie's liability and therefore its own "umbrella" policy does not.  The parties are familiar with the facts, so we recite only what is necessary.

2

1.     In New York,[1] courts resolve insurance coverage disputes by "'first look[ing] to the language of the policy.'" *Selective Ins. Co. of Am. v. Cnty. of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016) (quoting *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002)). The court must "afford a fair meaning to all of the language employed" and "leave no provision without force and effect." *Id.* (cleaned up). Unambiguous provisions are "given their plain and ordinary meaning," *Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (citation and internal quotation marks omitted), while ambiguous language is "interpreted in favor of the insured," *Selective*, 47 N.E.3d at 463. Language should be interpreted according to the "'reasonable expectations of the average insured.'" *Fed. Ins. Co. v. Int'l Bus. Machs. Corp.*, 965 N.E.2d 934, 936 (N.Y. 2012) (quoting *Cragg v. Allstate Indem. Corp.*, 950 N.E. 2d 500, 502 (N.Y. 2011)).

The Underwriters Policy calls itself a "Charterers Legal Liability" policy and adopts the "London Charterers Liability Wording 1996" for its coverage provision. The pertinent language of the coverage provision is:

> [Underwriters] shall indemnify [Furie] up to a limit of [$10,000,000] any one loss or series of losses arising out of an Accident all coverages combined in respect of . . . their legal . . . liabilities to third parties . . . which are

---

[1] The parties agree that, under the enforceable choice of law provision in the Underwriters Policy, New York law controls. *See Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 672–73 (9th Cir. 1997) (citations omitted).

covered in the United Kingdom Mutual Assurance Association (Bermuda) Ltd. standard form of certificate and/or under their club rules for charterers' risks published and in effect at the inception of this insurance.

The parties dispute what the Underwriters Policy means when it refers to the "club rules for charterers' risks."

The "United Kingdom Mutual Assurance Association (Bermuda) Ltd." ("U.K. Club") is a mutual protection and indemnity association, and the club rules govern its relationship with, and coverage provided to, its members. So when the Underwriters Policy refers to "club rules," it incorporates certain coverage by reference to what the U.K. Club provides to its members. The club rules are wide ranging. However, the Underwriters Policy's incorporation of club rules is qualified insofar as the provision for liability to third parties incorporates only "club rules *for charterers' risks*." There is a section of the club rules dedicated specifically to charterers: Rule 4 ("Special Cover for Charterers, Specialist Operations, Passengers Ships, and TT Risks"), Section 1 ("Charterers"). This section, through an addendum, provides:

> This insurance covers the liability of the above-named Member in his capacity as charterer in respect of risks set out in Rule 2[, the club rules' general list of "risks covered,"] and includes, pursuant to Rule 4 Section 1(A), the liability of the charterer to indemnify the owner or disponent owner in respect of such risks, to the extent that they arise out of operations or activities ordinarily carried on by, or ordinarily at the risk and responsibility of, a charterer.

4

Rule 2 covers injuries to seamen—the sort of risk at issue here.

A plain and simple reading of the Underwriters Policy—one that any reasonable insured would understand—is that when the policy says "club rules for charterers' risks" it refers to those club rules that concern charterers' risks. We reject Gemini's convoluted arguments to the contrary, which seek to turn the Underwriters Policy into a general liability policy. To do so, Gemini walks a winding road through various rules not relevant to charterers, unreasonably misconstrues the club rules' definitions section, or imposes illogical prerequisites on Section 1 of Rule 4. Because the Underwriters Policy is plain and unambiguous, we conclude that it covers Furie's liability only in Furie's "capacity as charterer," and indemnifies CISPRI for the risk of injury to seamen only to the extent that risk arises out of Furie's "operations or activities ordinarily carried on by, or ordinarily at the risk and responsibility of, a charterer."

2.    Having outlined the extent of the Underwriters Policy's coverage, we next determine whether Furie's liability to CISPRI triggers that coverage.

Furie was a "time charterer," having chartered a vessel from CISPRI on an as-needed basis. "A time-charterer . . . directs the movements and cargo operations of [a] ship[,]" *Alexander v. United States*, 63 F.3d 820, 822–23 (9th Cir. 1995), and is in control of "direct[ing] the vessel's commercial activities," "designat[ing] the cargo to be carried," and "determin[ing] the vessel's routes and destinations." *Moore*

5

*v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990). Under a time charter, "'[p]ossession and control remain with the owner and the ship is operated by its regular crew.'" *Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.*, 830 F.2d 1332, 1340 (5th Cir. 1987) (quoting *Migut v. Hyman-Michaels Co.*, 571 F.2d 352, 355 (6th Cir. 1978)).[2]

"Under traditional admiralty principles an injured seaman cannot sue a time charterer unless the seaman can show either the time charterer had enough control of the vessel to render it the owner pro hac vice . . . or the time charterer was actively negligent." *Alexander*, 63 F.3d at 822 (citing Thomas J. Shoenbaum, Admiralty and Maritime Law § 10-12 at 404 (1987)). A time charterer is not typically liable to those injured on the chartered vessel *as a charterer* unless the injuries stem from the limited role the time charterer plays in the operation of the vessel. *See Chan v. Society Expeditions*, 123 F.3d 1287, 1293 (9th Cir. 1997).

---

[2] In this case, the Time Charter Party between Furie and CISPRI provided that

> [t]he entire operation, navigation, and management of the vessel shall be in the exclusive control and command of the OWNER, its master, officers and crew. The vessel will be operated and the services hereunder will be rendered as requested by the CHARTERER, subject always to the exclusive right of the OWNER or the master to determine whether operation of the vessel may be safely undertaken. In the performance of the Charter, the OWNER is deemed to be an independent contractor, the CHARTERER being concerned only with the results of the services performed.

The factfinder found that Furie did not cause injury to seamen from a breach of any contractual duty stemming from the charter contract, i.e., an obligation to "exercise due diligence to direct the vessel to safe berths and safe locations recognizing the risks inherent with vessel operations in Cook Inlet and surrounding areas."[3]  Furie's negligence arose from its mis-design and misuse of a device on its natural gas extraction platform, which failed to secure CISPRI's vessel and caused injury to a seaman.  We disagree with Gemini's attempts to push this negligence into the charterers' "operations or activities" box, which requires comparison to cases where a charterer directed a vessel's crew to conduct certain activities in unsafe weather conditions, *see Hogden*, 87 F.3d at 1251, or sent a vessel into a hurricane, *see Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 899–900 (5th Cir. 1994), or stepped out of its role as charterer, giving rise to liability for breach of other non-charterer tort duties, *Chan*, 123 F.3d at 1294.

Furie is liable to CISPRI for causing injuries to CISPRI's seaman by breaching its duties as the owner of the platform, not for breach of duties owed as a charterer.  Because the Underwriters Policy covers liabilities arising only out of Furie's capacity as a charterer, the policy's coverage is not triggered.

**AFFIRMED.**

---

[3] The parties agree that they, and we, are bound by these findings of fact, which were made in an arbitration between CISPRI and Furie.

FILED



MAY 7 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COLLINS, Circuit Judge, concurring in the judgment:

I concur in the majority's ultimate conclusion, in Section 1 of the memorandum disposition, that Policy Number GU300630j (the "Underwriters Policy")[1] covers the liability of Insured Furie Operating Alaska, LLC ("Furie') only in Furie's capacity as a charterer. I also concur in the majority's ultimate conclusion, in Section 2, that Furie's liability under the arbitral award is based on its breach of duties that it owed as a platform operator rather than as a charterer. But because my reasoning differs somewhat from the majority's on both scores, I concur only in the judgment.

1. I agree that the insurance coverage provided by the Underwriters Policy is limited to "charterers' risks" as set forth in the "club rules" of the United Kingdom Mutual Assurance Association (Bermuda) Ltd. Rule 1 of the relevant club rules states that "[t]he standard cover afforded by the Association to an Owner who has entered his ship in the Association is set out in Rule 2," and Rule 2, as relevant here, covers "[l]iability to pay damages or compensation for personal injury or death of any seaman." However, under the definitional provisions set forth in Rule 44, Furie is an "[o]wner" for purposes of the club rules only because,

---

[1] The policy was issued by Appellees Syndicates 1183, 1036, and 2007, Certain Underwriters at Lloyd's, London ("the Underwriters").

and therefore only to the extent that, it is a *"charterer"* (emphasis added). Moreover, as noted, the policy expressly limits its coverage under the club rules to *"charterers' risks."* As a result, it is clear that Furie has coverage for personal injury of a seaman under Rule 2 only with respect to liability it incurs in its capacity as a charterer.

The majority instead relies on Rule 4, Section 1, *see* Memo. Dispo. at 4–5, but in my view that provision is irrelevant. That section specifies certain additional coverages that are available to charterers, but those coverages are effective "only by special agreement in writing." In this case, there is concededly no such special agreement between Furie and the Underwriters. Moreover, the only additional coverage listed in Rule 4, Section 1 that addresses liability under "Rule 2" is the additional coverage for liability of a charterer in Section 1(A) "to *indemnify* the owner . . . of the entered ship in respect of the risks set out in Rule 2" (emphasis added). However, it is clear that the arbitration award to CISPRI Services, LLC ("CISPRI") against Furie is based on contribution and *not* indemnity, because the award expressly states that "each tortfeasor is only liable for its proportionate share of fault." Thus, Furie owed CISPRI, not because Furie was obligated to pay for CISPRI's liability by agreement, but only because CISPRI had paid a liability that was in relevant part entirely Furie's: 65% of E.H.'s recoverable damages. In short, because the additional coverage specified in Rule 4, Section 1 was never added to

2

the policy and would not be applicable in any event, it is irrelevant here.

The majority also relies on the Addendum for Charterers, which sets forth recommended "full wording of clauses" that can be added to implement the additional coverage specified in Rule 4, Section 1. *See* Memo. Dispo. at 4–5. But the Addendum only serves to further confirm that Rule 4 does not apply here and that the relevant coverage here is Furie's coverage under Rule 2, which (as I have explained) is limited to its liability for personal injuries to a seaman in its capacity as a charterer. In summarizing the *total* relevant coverage for charterers for liability for "Risks Set Out in Rule 2" that would exist if the additional coverage in Rule 4, Section 1(A) is selected, the Addendum states that the policy would cover (1) "the liability of the [insured] *in his capacity as charterer* in respect of risks set out in Rule 2"; and (2) "includes, *pursuant to Rule 4 Section 1(A),* the liability of the charterer to *indemnify* the owner or disponent owner in respect of such risks, to the extent that they arise out of operations or activities ordinarily carried on by, or ordinarily at the risk and responsibility of, a charterer" (emphasis added). The Addendum thus confirms that, in the absence of an election to add the extra coverage for indemnity "pursuant to Rule 4 Section 1(A)," the coverage that would apply under Rule 2 *by itself* is (as I have set forth) "the liability of the [insured] *in his capacity as charterer* in respect of risks set out in Rule 2."

2. I also agree that the liability found by the arbitrator against Furie was not

3

based on Furie's capacity as a charterer.

Appellant Gemini Insurance Company ("Gemini") concedes that, in light of the arbitrator's holding that Furie did not breach the Charter Party, that agreement's obligations cannot provide any basis for concluding that Furie was liable in its capacity as a charterer here. Gemini nonetheless insists that, in addition to any obligations under the Charter Party, "independent principles of tort law" may also supply additional obligations of a charterer and that those were breached here. In particular, Gemini relies on *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512 (5th Cir. 1996), and other cases, which Gemini describes as holding that a time charterer has a "duty to exercise reasonable care in choosing a specific time in which the chartered vessel will perform its assignment" and that it "may be liable for negligence even if its conduct is not a violation of the time charter party." The problem with this theory is that the arbitrator's findings preclude invoking it here.

To the extent that a charterer can be held liable, in its capacity as a charterer, for a *negligent* failure to instruct the vessel as to its route, mission, or timing, that failure must involve a risk that the charterer, *as a charterer*, should have foreseen. But the arbitrator expressly found that, due to Furie's earlier negligent installation of the "Mooring Apparatus"—an installation Furie performed in its capacity as platform operator—not even the platform personnel knew "what vessels in what conditions might safely use the Mooring Apparatus." The arbitrator further found

4

that "those on Furie's Platform did not know the unsafe situation in which they might put vessels using the Mooring Apparatus, including the Vessel" at issue here. But if the installation-related deficiencies that created the risk were unknown to the platform personnel, it follows that they were certainly unknowable to an *independent charterer*, who therefore could not foresee the relevant risks involved here as to the timing, the conditions, or the type of vessel. Because an independent charterer could not foresee the relevant risks, Furie's liability in negligence here rests *only* on the fact that, *in Furie's capacity as platform operator*, the risks *were* foreseeable. This is therefore not a situation in which Furie's liability could be said to rest *both* on its capacity as a charterer and its capacity as a platform operator; here, Furie's liability rests *solely* on the latter capacity. Accordingly, Furie lacked coverage under the Underwriters Policy for the liability at issue here.

For the foregoing reasons, I concur in the judgment.